**Ernesto Alers RODRIGUEZ,
et al., Plaintiffs,**

**v.**

**FULLERTON TIRES CORP.,
et al., Defendants Third–
Party Plaintiffs,**

**v.**

**CUSTOM METAL SPINNING
CORPORATION, et al., Third
Party Defendants.**

Civil No. 95–1119(SEC).

United States District Court,
D. Puerto Rico.

July 24, 1996.

Francisco J. Amundaray–Rodriguez, Old San Juan, PR, for Plaintiffs.

Jaime E. Morales–Morales, and Dario Rivera–Carrasquillo, Pinto, Lugo & Rivera, San Juan, PR, for Defendants third-party plaintiffs.

Gerardo L. Santiago–Puig, Río Piedras, PR, Roberto Román–Valentín, Bayamón, PR, Carlos F. López, Santurce, PR, Alfredo Fernández–Martínez, Santurce, PR, for third party defendants.

### OPINION AND ORDER

CASELLAS, District Judge.

The genius of the great Michelangelo resided in his ability to conceive the sculpture in his mind, and then proceed to chisel away from the marble block everything that did not comport with his mental portrait of the sculpture.[1] Similarly, we must chisel away from the Court's docket every case that does not fit within the confines of our federal jurisdiction. With legal chisel in hand, and for the reasons discussed below, we hereby **GRANT** the third-party defendants' Motion to Dismiss. **(Docket # 38).**

### Factual Background

Plaintiffs Ernesto Alers Rodriguez and Marylin Cortes Corchado are citizens of Isabela Puerto Rico, and they have lived together for the last ten years. According to the plaintiffs' allegations, on or about 1987, one Mr. Kaleb Vélez received some tire-rim pamphlets from codefendant Fullerton Tires Corp. ("Fullerton"), and tendered them to Mr. Teodoro Mendez. After reviewing them, Mr. Mendez asked Mr. Velez to place an order of tire rims with Fullerton on his behalf. Mr. Velez acceded to Mr. Mendez's request and acquired several rims from Fullerton. Among the rims which he ordered, he acquired some rims especially designed for sand-track wheels.

On or before 1989, Mr. Mendez sold two tires and rims of this nature (sand-track rims and tires) to coplaintiff Ernesto Alers Rodriguez ("Alers Rodriguez") for $700.00. On February 6, 1994, Alers Rodriguez visited Gomera Valentín (a tire sales and repair center located in Isabela, Puerto Rico) to inflate the two tires acquired from Mr. Mendez, since he had not used them for a long period of time prior to said day, and stored them in his house. The son of the owners of the tire sales and repair center proceeded to fill up the one of the two tires with thirty six pounds of air pressure. Coplaintiff Ernesto Alers Rodriguez was standing right next to him, holding the tire and its rim. All of a sudden they heard an explosion and, according to plaintiff Alers Rodriguez, the tire rim broke down in two pieces and hit his hand, severing two fingers of his right hand and damaging permanently a third one. The people who witnessed the accident immediately rushed him to the hospital, where they treated his injuries. On February 6, 1995, he filed the present lawsuit.

Plaintiffs invoke the doctrine of strict liability for product liability claims in Puerto Rico to ascribe responsibility to Fullerton. Plaintiffs allege that the tire rim that broke down during the aforementioned accident was defective, because the broken rim, a two-piece rim and the weld that joined the two pieces of the rim was defective, since it contained numerous voids, pores and missing

1. Howard Hibbard, *Michelangelo*, p. 56 (Harper & Row, 1974).

weld materials, resulting in a weld lacking the proper strength. Plaintiff asserts that a properly welded rim would not have failed in this manner. On September 13, 1995 defendants filed a third-party complaint, which they later amended on November 2, 1995, to include the manufacturer of the tire rim, Custom Metal Spinning Corporation, as well as Walter Jenkins, his wife Marianne Jenkins and the conjugal partnership composed between them. (Hereinafter referred to as "Custom Metals" or "third-party defendants"). On April 29, 1996 third-party defendants filed a motion to dismiss for lack of personal jurisdiction.

The third-party complaint alleges that Custom Metal and the other third-party defendants were the entities who actually built or manufactured the rims mentioned in the complaint, one of which allegedly broke in two pieces causing damage to the plaintiff. Based upon plaintiffs' allegation that the breakage of the rim was caused by a defect of the product and/or a defect in the manufacturing or design of the rim, third-party plaintiff Fullerton alleges that said third-party defendants are responsible directly to the plaintiff or to the third-party plaintiff if a verdict or judgment is entered in plaintiff's favor.

**Applicable Law**

**In Personam Jurisdiction**

■ Whenever defendants challenge the Court's in personam jurisdiction, the plaintiff bears the burden of proving that jurisdiction lies in the forum state. *Sawtelle v. Farrell,* 70 F.3d 1381 (1st Cir.1995). In *Sawtelle,* the First Circuit Court of Appeals reiterated the well-established principle that in diversity cases, the forum's long-arm statute limits the federal court's exercise of personal jurisdiction over a non-resident defendant. *American Express International v. Mendez–Capellan,* 889 F.2d 1175 (1st Cir.1989). In the present case, Puerto Rico's Long–Arm Statute, 32 P.R.Laws Ann.App. III, R. 4.7, allows Puerto Rico courts to exercise personal juris-

diction over non-resident defendants. The relevant part of this statute provides for personal jurisdiction over a non-resident defendant if the action or claim arises because said person (1) "transacted business in Puerto Rico personally or through an agent; or (2) participated in tortious acts within Puerto Rico personally or through his agent ..." P.R.Laws Ann.Tit. 32, App. III, Rule 4.7(a). Upon careful review of the third party plaintiff's allegations, the Court concludes that third party defendants do not comply with either requisite.

Third-party defendant Walter Jenkins states in his unsworn statement under penalty of perjury that Custom Metal has neither applied for nor obtained a license to do business in Puerto Rico; that Custom Metal never, neither directly or through any agent or representative, conducted or carried out business in Puerto Rico; that Custom Metal is not at present transacting, nor has it ever transacted any business in Puerto Rico and that Custom Metal has never maintained any office or place of business in Puerto Rico. Walter Jenkins also asserts that it does not own or use, by itself or through any agent, real property located in Puerto Rico, and has never used or owned, directly or through any agent, any real property located in Puerto Rico. (Docket # 38, Walter Jenkins' Statement Under Penalty of Perjury, ¶¶ 2–6)

Third-party defendants also assert that they sold the type of rim which allegedly caused the damage to plaintiff, to Fullerton, whose offices are located in Fullerton, California, an adjacent town to La Mirada California, where the offices of the third party defendants are located. Id. at ¶ 8.

Third-party plaintiffs have failed to rebut such assertions with affidavits or documentation of their own. They may not defeat a summary judgment through mere allegation or denials of the other party's assertions. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(e).[2] Accordingly,

---

**2.** Fed.R.Civ.P. 12(c) states that "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as pro-

vided in Rule 56." Since third-party defendants have presented an unsworn statement under penalty of perjury, pursuant to 28 U.S.C. § 1746, we must treat their motion to dismiss as a motion for summary judgment, pursuant to Rule 56.

since third-party plaintiffs are unable to exercise personal jurisdiction over the third-party non-resident defendants through Puerto Rico's long-arm statute, we must dismiss.

## Stream of Commerce Doctrine

■ Third-party plaintiffs focus their analysis on the "business transaction" prong of Puerto Rico's Long Arm statute to justify jurisdiction over third-party defendants. They argue that third-party defendants satisfied the "business transaction" prong—and hence established minimum contacts in Puerto Rico—when they "purposefully availed themselves of the privilege of conducting activities within this forum [Puerto Rico]." They add that Custom Metal, "as manufacturers of sand racing tire rims, they made deliberate efforts to serve, either directly or indirectly, a potential market by placing their product in the stream of commerce ... Custom Metal and/or the Jenkins manufactured steel tire rims for use in sand racing. The nature of the product and the fact that Puerto Rico is an island whose climate and topography are amenable, make sand racing a conceivable and foreseeable sport for enthusiasts here." (Docket # 40, p. 3, 10–11)

Accordingly, third-party plaintiffs argue, "[i]t was not unforeseeable to Custom Metals and/or the Jenkins that their product would enter Puerto Rico in the normal stream of commerce, and as such, they are subject to suit in this forum for products liability claims for defects in the manufacture of their tire rims." Id. p. 10, 11.

Third-party defendants argue, and this Court agrees, that it would be unreasonable to conclude that a local sale in California of a defective rim generates sufficient minimum contacts to confer jurisdiction to the Puerto Rico District Court. The fact that the product sold in California somehow reached the Puerto Rican market and caused harm to its local users may be a regrettable consequence, but it is not enough to attach jurisdiction. Although Puerto Rico's Long–Arm Statute may sometimes cast a broad net over non-resident defendants, its jurisdictional grasp should not exceed its constitutional reach, or what's a constitution for? [3]

■ A review of case law from the United States Supreme Court, the First Circuit Court of Appeals and the Puerto Rico Supreme Court lead us to the unequivocal determination that, in the present case, exercise of personal jurisdiction over the non-resident third-party defendants would not comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

The seminal case which refused to adopt the "stream of commerce" theory was *Asahi Metal Industry Co. Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In that case, plaintiff lost control of his Honda Motorcycle and collided with a tractor. Plaintiff sustained severe injuries, and his passenger and wife died in the accident. Plaintiff filed a product liability claim in the Superior Court of the State of California. Plaintiff alleged that the accident was caused by the sudden loss of air and an explosion in the rear tire of the motorcycle. He also alleged that the motorcycle tire, tube and sealant were defective. Plaintiff's complaint named, among others, Cheng Shin Rubber Industrial Co., Ltd. ("Cheng Shin") the Taiwanese manufacturer of the tube. Cheng Shin in turn filed a cross-complaint seeking indemnification from its codefendants and from Asahi Metal Industry Co. Ltd. ("Asahi"), the Japanese manufacturer of the tube's valve assembly.

Defendant Cheng Shin sought jurisdiction pursuant to California's Long–Arm statute, which authorized the exercise of jurisdiction on "any basis not inconsistent with the Constitution of this state or of the United States." Asahi moved to quash Cheng Shin's service of summons, arguing that the State could not exert jurisdiction over it consistent with the Due Process clause of the Fourteenth Amendment.

---

**3.** We pay homage to Robert Browning's inspirational verse:
"Ah, but a man's reach should exceed his grasp, or what's a heaven for?"

*Andrea del Sarto*, line 97 (1855).

Upon appeal to the United States Supreme Court, the Court concluded that the state court's exercise of personal jurisdiction over Asahi would be unreasonable and unfair in violation of the Due Process Clause. With regards to the "stream of commerce" argument advanced by Cheng Shin, a plurality of the Court asserted that:

[t]he placement of a product into a stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

The First Circuit Court of Appeals has also rejected the "stream of commerce" theory in cases where there has been a lack of minimum contacts between the forum state and the nonresident defendant. In *Dalmau Rodriguez v. Hughes Aircraft Co.*, 781 F.2d 9 (1st Cir.1986), plaintiffs brought a diversity tort action against the manufacturer of a helicopter sold to the Puerto Rico Police department. The district court dismissed the complaint for lack of personal jurisdiction over the non-resident defendant corporation. The First Circuit affirmed the district court, and expressly declined to adopt plaintiff's "stream of commerce" theory to obtain personal jurisdiction over the non-resident defendant.

Appellant's stream of commerce theory must be rejected. Assuming that Hughes knew that the destination of the helicopters was Puerto Rico, we do not think that the sale of helicopters to a police department can be the source of a stream of commerce. This is not like opening a particular territory for sales to the general public. Nor can the single advertisement

of Hughes helicopters that [plaintiff] was in a magazine be viewed as the incipient source of a stream of commerce. There is nothing in the record showing that Hughes advertised regularly in magazines circulated in Puerto Rico or aimed its advertising at Puerto Rico. The sale, here it was not a stream or the beginning of one; it was an isolated splash. It was not the type of transaction that could reasonably lead a manufacturer to believe would be the basis for haling him into Court in Puerto Rico.

The Court in *Hughes* added: "The test is not knowledge of the ultimate destination of the product, but whether the manufacturer has purposely engaged in forum activities so it can reasonably expect to be haled into court there, and even then, the minimum requirements of 'fair play and substantial justice' may defeat jurisdiction. *Burger King [v. Rudzewicz,* 471 U.S. 462, 477] 105 S.Ct. [2174] at 2185 [85 L.Ed.2d 528 (1985)]; *World–Wide Volkswagen [Corp. v. Woodson]* 444 U.S. [286] at 292 [100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)].... See *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,* 628 F.2d 652, 667 (1st Cir.1980)." Id. at 15.

Upon review of the record and the facts before us, we cannot conclude that Custom Metal's sale of sand racing tire-rims in California to a California tire dealer (Fullerton) would create a reasonable expectation by third-party defendants to be haled into Puerto Rico's courts. Fullerton argues that "the nature of the product and the fact that Puerto Rico is an island whose climate and topography are amenable, make sand racing a conceivable and foreseeable sport for enthusiasts here" and therefore, Custom Metal should have foreseen that its product could be used by racing fans in Puerto Rico. Such argument—if accepted without the added requirement of minimum contacts—would open a Pandora's Box which could release the evils of universal jurisdiction upon all sand-racing equipment manufacturers. Such companies would be forced to litigate claims on every tropical island where sand-buggies are driven, regardless of whether the manufacturers of the product intended to market their product in any particular region. We refuse to adopt Fullerton's argument.

## Minimum Contacts

The United States Supreme Court laid out in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945) the jurisdictional principle of minimum contacts:

> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

With this jurisdictional principle in mind, we seek further guidance from the local forum's interpretation of the "minimum contacts" analysis. In *A.H. Thomas Co. v. Superior Court*, 98 P.R.R. 864 (1970), a young woman performing laboratory experiments in a chemistry course at the University of Puerto Rico suffered an accident when a glass tube broke and cut the tendons of the little finger of her right hand. She sued the University of Puerto Rico and its insurer. Defendants filed a third-party complaint against Arthur H. Thomas Company, a nonresident corporation. In the complaint, third-party plaintiffs alleged that "the glass tube had been bought by the University from said third-party defendant, and that if there was any liability, the accident had been caused by defects in manufacturing, or by the improper manufacture of said instrument." Id. at 869.

The Puerto Rico Supreme Court incorporated the general rule of minimum contacts in relation to constitutional due process requirements, and it affirmed the dismissal of the third-party complaint for lack of personal jurisdiction:

> ... even under the doctrine of minimum contacts, it is required that the contact within the forum be the result of a purposeful act on the part of defendant, *Hanson v. Denckla*, 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283] (1958), where it was stated at p. 253: 'the unilateral activity of those who claim some relationship with a nonresident cannot satisfy the requirement of contact with the forum state ... it is essential in each case that there be some act by which the defendant purposefully

avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' Id. at 869.

Recent Puerto Rico Supreme Court decisions have reiterated and applied the minimum contacts doctrine as outlined in *A.H. Thomas*. See *Riego v. Zuñiga v. LACSA*, 95 J.T.S. 155; *Peguero v. Hernandez Pellot*, 95 J.T.S. 156. In *A.H. Thomas*, the Court concluded that the evidence proffered by third-party plaintiffs (a purchase requisition and a purchase order) did not suffice to establish the minimum contacts required to justify personal jurisdiction. As we have previously noted, third-party defendants have properly documented that they have not conducted business in Puerto Rico nor purposefully availed themselves of the privileges and protections that would ensue from such commercial activities.

## General and Specific Jurisdiction

In addition to the minimum contacts analysis delineated above, the courts have acknowledged two types of personal jurisdiction: general and specific. *United Electrical. Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992). Courts have exercised general jurisdiction over defendants "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Id. at 1088 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–416, 104 S.Ct. 1868, 1872–1873, 80 L.Ed.2d 404 (1984)).

Applying the doctrine of general jurisdiction to the present case, the Court finds that the third-party defendants lacked sufficient contacts to justify the exercise of general jurisdiction over them. As noted above, the evidence does not reveal that third-party defendants have engaged in continuous or systematic activity in Puerto Rico. Third-party defendants have neither applied for nor obtained a license to do business in Puerto Rico; they have neither directly or through any agent or representative, conducted or carried out business in Puerto Rico; are not

at present transacting, nor has it ever transacted any business in Puerto Rico; furthermore, third party defendants have never maintained any office or place of business in Puerto Rico. (Jenkins' Statement Under Penalty of Perjury, ¶¶ 2–6)

■ The other side of the coin is specific jurisdiction. The First Circuit has been particularly active during recent years in its elucidation of this doctrine. In *Ticketmaster–New York v. Alioto*, 26 F.3d 201, 207 (1st Cir.1994) the Court held:

> to establish minimum contacts on a theory of specific jurisdiction, a plaintiff must first demonstrate that its cause of action "arises out of, or relates to" defendants contacts with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 US 408, 414 [104 S.Ct. 1868, 1872, 80 L.Ed.2d 404] ... Then, the plaintiff must demonstrate the deliberateness of the defendant's contacts, or, phrased another way, that the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.' *Hanson v. Denckla*, 357 US 235, 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283] (1958).

Even if a plaintiff succeeds in making these two showings, it is not home-free. The defendant may nonetheless avoid having to defend in a strange place if it can "establish that allowing the suit to go forward would be inconsistent with 'fair play and substantial justice.' *International Shoe*, 326 U.S. at 320 [66 S.Ct. at 160] ..." *Ticketmaster* at 207.

Even more recently, the First Circuit summarized in *Sawtelle v. Farrell*, 70 F.3d at 1389, the "three part analysis" to determine if sufficient contacts exist to exercise specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must in light of the gestalt factors, be reasonable.

Upon review of this three-pronged analysis, we hereby conclude that third-party plaintiff Fullerton has failed to satisfy the requirements to establish specific personal jurisdiction.

### Relatedness Requirement

The First Circuit has noted that the relatedness requirement is not met "... merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle* at 1389. In the case before us, Fullerton has not demonstrated nor alleged these specific contacts. Third-party defendants have established through their affidavits that they have not performed any activities in Puerto Rico. Fullerton has failed to rebut such documented assertions.

### Purposeful Availment

■ The purposeful availment requirement to exercise specific personal jurisdiction, has two cornerstones; the first cornerstone is foreseeability. *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir.1980); *World Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. The second cornerstone is voluntariness. *Ticketmaster* at 207–208. *Vencedor Mfg. Co. v. Gougler Indus. Inc.*, 557 F.2d 886, 891 (1st Cir.1977); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 ('cautioning that jurisdiction may not rest on the unilateral activity of another party or a third person.')

The First Circuit in *Sawtelle* recently expounded on the purposeful availment requirement vis-á-vis the "stream of commerce" theory. As previously discussed above, the First Circuit expressly rejected the application of the "stream of commerce" theory which is advanced by third-party plaintiff Fullerton.

> This Court has previously declined to adopt the stream of commerce theory of personal jurisdiction, a form of which is thus advanced by the Sawtelles. See *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671,

681–682 (1st Cir.1992); *Dalmau Rodriguez v. Hughes Aircraft Co.*, 781 F.2d 9, 15 (1st Cir.1986). We are guided by ... the Supreme Court's rejection of the claim that a commercial enterprise should be subject to personal jurisdiction wherever its conduct foreseeably causes injury, regardless of whether the defendant directed its conduct toward the forum state. *See Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 112 [107 S.Ct. 1026, 1032, 94 L.Ed.2d 92] (1987) (the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State).

In the present case, Fullerton has failed to show or allege any facts in its complaint to fulfill the "purposeful availment" requirement. There is no evidence in the record to show that third-party defendants have availed themselves of the privilege of conducting business in Puerto Rico. Third-party defendants sold their product to Fullerton, a California distributor with offices located in a town adjacent to defendants' business offices.

**Exercise of Jurisdiction Must be Reasonable**

We must consider the reasonableness of jurisdiction in light of several "gestalt" factors. The First Circuit in *Ticketmaster* elaborated on the application of this third prong:

> In constitutional terms, the jurisdictional inquiry is not a mechanical exercise. The Court has long insisted that concepts of reasonableness must inform a properly performed minimum contacts analysis ... 'This means that, even where purposefully generated contacts exist, courts must consider a panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal.' *Pleasant St. I*, 960 F.2d at 1088; *accord Donatelli [v. National Hockey League]*, 893 F.2d [459] at 464–65 [ (1st Cir.1990) ]. The Supreme Court has identified five such factors, namely (1) the defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's

interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies. *See* Burger King, 471 U.S. at 477 [105 S.Ct. at 2184] ...

The First Circuit has recently instructed us that plaintiff's failure to demonstrate the necessary minimum contacts precludes the need to determine the "reasonableness" element. *Sawtelle* at 1394. "The gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." *United Electrical Workers v. Pleasant St. I*, 960 F.2d at 1091, n. 11.

Accordingly, since we conclude that third-party plaintiffs have failed to establish the elements of relatedness and "purposeful availment", we need not engage in the reasonableness analysis. Assuming *arguendo*, that Fullerton could make a colorable claim on the first two prongs, a careful examination of the facts of the present case would prompt us to determine that exercise of specific personal jurisdiction over third party defendants would be unreasonable, as we have noted previously.

Pursuant to our above discussion, third-party defendants' Motion to Dismiss is hereby **GRANTED**. (Docket # 38) Accordingly, third-party complaint against third-party defendants Custom Metal Spinning Corporation, Walter Jenkins, Marianne Jenkins and the conjugal partnership constituted between them is hereby **DISMISSED**. Partial Judgment shall follow accordingly.

**SO ORDERED.**