USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 96-2170 ERNESTO ALERS RODRIGUEZ, ET AL., Plaintiffs, Appellees, v. FULLERTON TIRES CORP., ET AL., Defendants, Third-Party Plaintiffs, Appellants, v. CUSTOM METAL SPINNING CORPORATION, ET AL., Third-Party Defendants, Appellees. ________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ _________________________ Jaime E. Morales Morales and Pinto-Lugo & Rivera on brief _________________________ ____________________ for appellant (third-party plaintiff). Alfredo Fernandez Martinez and Martinez-Alvarez, Menendez ____________________________ __________________________ Cortada & LeFranc Romero, PSC on brief for appellees (third-party _____________________________ defendants). _________________________ June 9, 1997 _________________________ SELYA, Circuit Judge. Defendant and third-party SELYA, Circuit Judge. ______________ plaintiff Fullerton Tires Corp. (Fullerton) appeals from a district court order dismissing its third-party complaint against Custom Metal Spinning Corporation (CMSC) for want of in personam __ ________ jurisdiction.1 Using the parlance of the trade, Fullerton is spinning its wheels. This case had its genesis in or before 1989 when Ernesto Alers Rodriguez (Rodriguez), a resident of Puerto Rico, purchased two sand track tires from a Puerto Rican dealer who had seen the tires advertised in a pamphlet distributed by Fullerton and had ordered a supply of them. Some five years later, one of the purchased tires exploded while being inflated. The rim snapped, severely injuring Rodriguez. Invoking diversity jurisdiction, 28 U.S.C. 1332 (1994), Rodriguez sued Fullerton in Puerto Rico's federal district court. Fullerton filed a third-party complaint against CMSC (the manufacturer of the rim used in Fullerton's sand track tires). In due course, CMSC moved to dismiss the claim, alleging lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). ___ The court obliged. Rodriguez v. Fullerton Tires Corp., 937 F. _________ ______________________ Supp. 122 (D.P.R. 1996). After the court certified the judgment  ____________________ 1Fullerton Tires, Inc., an affiliated corporation, joined in filing the third-party complaint. That pleading named CMSC; its principals, Walter and Marianne Jenkins; and other individuals in privity with them as third-party defendants. For simplicity's sake, we treat the appeal as if only Fullerton and CMSC were parties. Because the jurisdictional argument is weaker as to the individuals, our decision disposes completely of the Fullerton entities' attempts to sue CMSC and its privies in Puerto Rico. 2 in accordance with Fed. R. Civ. P. 54(b), this appeal ensued. We need not linger. The district court's opinion captures the essence of the case and applies the controlling legal principles in an irreproachable manner. Hence, we affirm the judgment primarily on the basis of the opinion below. We add six comments. First: Fullerton bemoans the district court's First: _____ treatment of CMSC's motion to dismiss as a motion for summary judgment. We are unmoved by this jeremiad. Motions to dismiss come under the aegis of Fed. R. Civ. P. 12(b). The rule states that if "matters outside the pleading are presented to and not excluded by the court, the [Rule 12] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." The proper approach to conversion under this rule is functional rather than mechanical. See Vega- ___ _____ Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 177 (1st Cir. _________ ____________________ 1997); Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d _____________________________ _______________ 15, 18-19 (1st Cir. 1992). Here, CMSC attached to its motion several declarations ostensibly made under penalties of perjury. Given the specific language of Rule 12(b), the inclusion of these materials with the motion put the nonmovant, Fullerton, squarely on notice that the court had the option of treating the motion as one for summary judgment. Of course, a motion cannot be converted to one for summary judgment unless the adverse party is given "reasonable opportunity to present all material made pertinent to such a 3 motion by Rule 56." Fed. R. Civ. P. 12(b). Here, however, that requirement was satisfied. CMSC filed its dispositive motion on April 29, 1996. Fullerton did not file its opposition until July 10, 1996. During that interval Fullerton, had it chosen to do so, could have served counter-affidavits, made other evidentiary submissions, or sought leave to defer its response to the motion until it had conducted jurisdictional discovery. It pursued none of these alternatives. Instead, it filed an opposition which tried to meet the motion head-on. The district court then considered the declarations in its determination of the jurisdictional issue. See Rodriguez, 937 F. Supp. at 124-25. ___ _________ Since Fullerton had ample opportunity to present pertinent materials in opposition to CMSC's motion, as well as the incentive to do so, we think that the court acted appropriately in impliedly converting the motion to a motion for summary judgment. See American Express Int'l, Inc. v. Mendez-Capellan, ___ _____________________________ _______________ 889 F.2d 1175, 1178 (1st Cir. 1989) (finding that the district court's conversion of a Rule 12(b)(2) motion to a Rule 56 motion was proper); see also Vega-Rodriguez, 110 F.3d at 177 (explaining ___ ____ ______________ that when extrinsic materials are proffered and are actually considered by the nisi prius court, conversion is proper). To be sure, we can envision circumstances in which fairness might require special notice of a court's intent to exercise the conversion privilege. See, e.g., Ohio v. Peterson, ___ ____ ____ _________ Lowry, Rall, Barber & Ross, 585 F.2d 454, 455-57 (10th Cir. _____________________________ 1978). But this is not such a situation. The district court 4 never indicated that it would eschew conversion or otherwise refuse to consider the proffered exhibits. Moreover, the district court continued to apply the prima facie standard, see ___ infra, not some more grueling standard indigenous to Rule 56. _____ Last, but not least, Fullerton to this day does not challenge CMSC's account of the relevant circumstances, but, rather, attacks the legal significance of certain facts without seeking to contradict them. Consequently, the application of Rule 56 produced no perceptible unfairness here. Second: It is the plaintiff's burden to establish that Second: ______ the forum court has jurisdiction over the person of the sued defendant. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. ___ ________ _______ 1995); Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d ___________________ ________________________ 138, 145 (1st Cir. 1995). There are several standards that a court can use in determining whether the exercise of personal jurisdiction is lawful. These include the prima facie standard, the preponderance standard, and the likelihood standard. See ___ Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675-78 (1st Cir. ____ _____________________ 1992). We have no occasion today to delineate either the differences among these approaches or the considerations that influence a court's choice to use one standard rather than another at a particular stage of the litigation. For present purposes, it suffices to say that the least taxing of these standards from a plaintiff's standpoint, and the one most commonly employed in the early stages of litigation, is the prima facie standard. Under it, a suitor, in order to stave 5 off defeat, "must make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." Id. at 675 (citation and internal ___ quotation marks omitted). When it employs the prima facie standard, a district court does not act as a factfinder; to the contrary, it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction. See id. Because this is a quintessentially legal determination, ___ ___ appellate review is plenary. See Ticketmaster-N.Y., Inc. v. ___ _______________________ Alioto, 26 F.3d 201, 204 (1st Cir. 1994). ______ In the case at hand, the district court purposed to apply the prima facie standard and made a determination that it did not have in personam jurisdiction over CMSC. See Rodriguez, __ ________ ___ _________ 937 F. Supp. at 124-25. Citing Foster-Miller, the appellant _____________ complains that the court erred because it failed to give advance notice as to which of the three standards it would utilize in resolving the jurisdictional issue. This protest distorts the rationale of Foster-Miller. _____________ There, we vacated a dismissal when the trial court, having ______ advised counsel that it would apply the prima facie standard, ________________________________________________________________ shifted gears without warning and applied a more rigorous standard. 46 F.3d at 143. We said in that context that a trial __ ____ _______ court should "alert the parties in advance to the level of scrutiny that it will apply to the pending motion [to dismiss]." Id. at 151. ___ But the instant case is at a considerable remove from 6 Foster-Miller. Here, the signals remained constant; the court _____________ steered a steady course and forthrightly applied the baseline standard. We believe that all litigants effectively are on notice that motions to dismiss for want of personal jurisdiction will be adjudicated under the prima facie standard unless the ______ court informs them in advance that it will apply a more demanding test. Thus, the court below was under no obligation to give the appellant special notice that it would conduct business as usual, any more than a court, before passing upon a motion for a directed verdict, would have to give advance warning that it intended to apply the customary complex of legal rules. The appellant tries to avoid this conclusion by insisting that the lower court, despite using the vocabulary associated with prima facie showings, actually required it to pass a higher level of scrutiny.2 Were the court guilty of such tergiversation, the appellant would have a legitimate grievance. See Foster-Miller, 46 F.3d at 150-51. ___ _____________ But the accusation here is merely bombast; we find no support for it in the lower court's opinion or elsewhere in the record. CMSC's assertions anent jurisdictional facts were buttressed by declarations made on personal knowledge; Fullerton  ____________________ 2In Boit, we noted that "an opinion using the terminology of ____ `prima facie' showing may fairly be read as requiring a bit more e.g., that the plaintiff present plausible evidence tending to ____ show that the court has jurisdiction." Boit, 967 F.2d at 675 n.2 ____ (citation and internal quotation marks omitted). To the extent (if any) that Judge Casellas' opinion falls into this category, we do not deem it to have deviated in any material way from the prima facie standard. 7 did nothing to rebut or dispute these facts, despite abundant time to do so; and the lower court therefore had the right, consistent with the prima facie standard, to take these facts as true. The court's opinion plainly indicates that it reviewed the materials presented and passed upon them without essaying credibility judgments, resolving evidentiary conflicts, or otherwise making findings of fact. See, e.g., Rodriguez, 937 F. ___ ____ _________ Supp. at 124-25. In short, Fullerton's claim that the district court surreptitiously applied a more stringent degree of perscrutation than that typically associated with the prima facie standard is totally unsubstantiated. Third: Taking as true the specific averments of the Third: _____ third-party complaint, as supplemented by the declarations attached to CMSC's motion, the factual scenario is not in serious dispute. CMSC sold rims to Fullerton (presumably in California, where both corporations maintained their headquarters), knowing that Fullerton would incorporate them into tires and offer them for sale in distant markets. Fullerton, in turn, sent brochures to Puerto Rico among other places, advertised in national publications which were disseminated in the Commonwealth, and filled orders emanating from there. The record confirms, however, that CMSC never conducted any business in Puerto Rico (either directly or through agents), never applied for or obtained authorization to do business there, and never owned, leased, or otherwise used an office or other property in the Commonwealth. Based on these facts, the district court found 8 that CMSC was not amenable to suit in Puerto Rico.3 See id. at ___ ___ 128. In this venue, Fullerton argues, as it did below, that CMSC, by placing its product into the stream of interstate commerce, transacted business in Puerto Rico sufficient to satisfy the minimum contacts requirement. This argument will not wash. In Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102 _______________________ ____________ (1987), the Supreme Court held that the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State," and, thus, is insufficient to support a claim of personal jurisdiction. Id. at 112 (plurality opinion). Even assuming ___ that CMSC had specific knowledge that the stream of commerce would move its tire rims into Puerto Rico and there is neither evidence nor allegation to that effect this awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts. See id. Asahi ___ ___ _____ is still good law, see Boit, 967 F.2d at 681-83, and Fullerton ___ ____ has failed to direct us to any persuasive authority supporting a contrary view. Fourth: The appellant's next argument deserves high Fourth: ______  ____________________ 3The lower court determined that the appellant had not made the requisite jurisdictional showing under either the federal Constitution, see Ticketmaster, 26 F.3d at 204-12 (describing ___ ____________ constitutional minima), or Puerto Rico's long-arm statute, P.R. Laws Ann. tit. 32, App. III, Rule 4.7(a) (1989). See Rodriguez, ___ _________ 937 F. Supp. at 124. Although we agree with both aspects of the district court's holding, we couch our ensuing discussion in terms of the constitutional requirement. 9 marks for ingenuity, but otherwise rates a failing grade. The argument features a suggestion that the specific nature of CMSC's product tire rims designed for use with sand track tires made it foreseeable that CMSC could be amenable to suit in Puerto Rico, an island ecosystem containing an abundance of sandy beaches ideal for dune buggies and other sandworthy vehicles. This argument proves too much. Sand, a loose granular material that results from the disintegration of rocks, consists of particles smaller than gravel but larger than silt. The earth's land mass (excluding the ice caps of Greenland and Antarctica) totals 32.1 billion acres. See Richard Jackson & Lloyd Hudman, World Regional ___ _______________ Geography 50 (2d ed. 1986). This total includes 4.2 billion _________ acres of desert and 1.7 billion acres of soil comprised primarily of sand. See id. at 51. Put another way, roughly 18% of the ___ ___ world's land surface is covered with sand.4 Subjecting a manufacturer to suit in Puerto Rico merely because its product is designed for use in sand would offend the constitutional principles that limit a state's authority to exercise jurisdiction. Under such a regime, a manufacturer of life preservers automatically would be subject to suit in every jurisdiction whose boundaries included an ocean, a river, a  ____________________ 4This figure is not static as many of the world's regions are experiencing desertification, a process commonly described as the slow encroachment of fertile lands by arid soils. See David ___ Hastings, GIS Techniques Using NOAA Data Improve Monitoring of _______________________________________________________ Desertification (visited May 12, 1997) seg/globsys/gisdes.html>. 10 stream, a lake, a pond, or a swimming pool. By the same token, a manufacturer of air conditioners would be subject to suit worldwide. This surely is not the law. See Asahi, 480 U.S. at ___ _____ 109-12 (imposing reasonableness requirement in respect to foreseeability). Fifth: Following the granting of CMSC's motion, Fifth: _____ Fullerton sought reconsideration, Fed. R. Civ. P. 59(e), proffering a copy of a Dun and Bradstreet credit report. The district court refused reconsideration, and Fullerton asks us to reverse this ruling. This ground of appeal lacks force. A district court's ruling on a motion to reconsider is reviewable only for abuse of discretion. See Cotto v. United ___ _____ ______ States, 993 F.2d 274, 277 (1st Cir. 1993); Appeal of Sun Pipe ______ ___________________ Line Co., 831 F.2d 22, 25 (1st Cir. 1987). The "new" document ________ that Fullerton proffered the Dun and Bradstreet report hardly qualifies as newly discovered evidence. More importantly, it indicates only that CMSC serves a market comprising the "United States, primarily California." That sort of broad generality has very little bearing on whether a defendant's activities have been directed to a particular place in a jurisdictionally significant fashion. In essence, then, the belatedly proffered report did no more than confirm what the court already knew that CMSC placed its product into the stream of interstate commerce. Under these circumstances, the court's rejection of the motion did not constitute an abuse of discretion. 11 Sixth: The appellant's motion for reconsideration also Sixth: _____ requested that the lower court delay the entry of judgment and permit discovery on the jurisdictional issue. This request, which had not been made earlier, was untimely.5 See, e.g., ___ ____ Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 ________________ ______________________ (1st Cir. 1973). Therefore, the district court did not err in declining to honor it. Affirmed. Affirmed. ________  ____________________ 5Fullerton entered its appearance in the district court on March 27, 1995. It brought a third-party complaint against CMSC on December 27, 1995. CMSC did not file its Rule 12(b)(2) motion until April of 1996 and Fullerton did not respond until July. As this timetable illustrates, the appellant had ample opportunity to initiate discovery before the district court acted upon CMSC's motion. 12