Felix MONTAÑEZ MIRANDA, Plaintiff,

v.

BANCO PROGRESO, S.A.C.A.,
et al., Defendants.

Civil No. 96–2129(SEC).

United States District Court,
D. Puerto Rico.

July 21, 1997.

**90**

Monsita Lecaros–Arribas, Nevarez & Sanchez Alvarez, San Juan, PR, for Plaintiff.

Francisco A. Besosa, Axtmayer, Adsuar, Muñiz & Goyco, San Juan, PR, Julie F. Ferguson, Carlos F. Consepción, Concepción, Sekton & Urdaneta, Coral Gables, FL, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is a motion to dismiss filed by defendants (**Docket # 6**). Upon careful consideration of the parties' arguments and the applicable law, defendants' motion to dismiss is **GRANTED.**

On September 18, 1996, plaintiff Banco Progreso Internacional of Puerto Rico ("BPI–Puerto Rico") brought this action to recover a sum in excess of $15,000,000 for negligent and fraudulent transactions alleged to have been committed by defendants and to have caused the collapse of plaintiff. Plaintiff has named as defendants five Venezuelan corporations—Banco Progreso S.A.C.A., Banco Republica, Sofilatin, Seguros Progreso and Latinoamericana ("defendant-shareholders")—alleged to have been shareholders of BPI–Puerto Rico, and FOGADE,[1] the purported sole and successor shareholder of these corporations.

### Factual Background

According to the amended complaint, plaintiff is an international banking institution established in Puerto Rico on February 2, 1992. At the end of its first year in operation, BPI–Puerto Rico had assets of $40,000,000 and suffered a loss of only $318,000. The complaint notes that at the end of its second year, however, plaintiff's losses amounted to over $7.2 million. Plaintiff alleges that the defendant-shareholders of BPI–Puerto Rico caused the losses and attempted to hide the losses by transferring them to an entity called Banco Progreso Internacional de Panama, S.A. (Complaint ¶¶ 3.6–3.8)

The Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico ("OCFI") mandated that plaintiff issue new shares in the amount of approximately $9.1 million to counter the losses suffered and to replenish its depleted capital. *Id.,* ¶ 3.9. In December of 1993, the plaintiff's Board of Directors, which are not named as parties in the complaint, allegedly decided unilaterally that the $9 million contribution would be made by the plaintiff's shareholders in proportion to their ownership interest, instead of through the issuance of new shares. *Id.,* ¶ 3.10.

---

1. FOGADE ("Fondo de Garantia de Depositos y Proteccion Bancaria") is a semiautonomous governmental agency of the Republic of Venezuela. It is the Federal Deposit Insurance Corporation of the Republic of Venezuela with functions and duties equivalent to those of the United States FDIC.

In early 1994, BPI–Puerto Rico allegedly received wire transfers totaling $9.6 million from "various entities," some of which were not stockholders. The complaint notes that such transfers were first reported in BPI–Puerto Rico's books as short-term loans, but that the books were eventually changed to indicate that the transfers were capital contributions. *Id.*, ¶¶ 3.11–3.12.

In February 1994, BPI–Puerto Rico allegedly transferred $10 million to defendant Banco Progreso S.A.C.A. and reported the transfer as a loan. BPI–Puerto Rico is alleged to have reported the same $10 million dollars as a loan to a company called Imbersora Imberdon. *Id.* ¶ 3.14. Plaintiff claims that there is no documentation to suggest that the transaction was a loan to either one of these companies. On March 25, 1994, BPI–Puerto Rico transferred $3 million to another affiliate, Banco Latinoamericano, which transfer was eventually classified as a loan. *Id.* ¶ 3.17 The complaint also alleges that the defendant-shareholders engaged in a practice whereby they would sell loans to BPI–Puerto Rico with no guarantees. In the event that the loans became uncollectible, the defendant-shareholders would buy them back from BPI–Puerto Rico, who would endorse a promissory note to them. Defendants would then sue the debtor, keep the money recovered and report a loss in Puerto Rico and a profit in Venezuela. Id., ¶ 3.18.

Pursuant to these actions, plaintiff seeks relief in the amount of $15 million claiming that the defendants' action were unlawful, grossly negligent, fraudulent and a breach of fiduciary duty owed to BPI–Puerto Rico.

### Applicable Law/Analysis

#### Service of Process

Defendants claim that the Court lacks personal jurisdiction over them due to insufficient service of process. We shall not tarry on this argument. The first five defendants were served pursuant to the provisions applicable to foreign corporations established by Rule 4(h)(2) of the Federal Rules of Civil Procedure by Mr. Ramon D.J. Escalante, a Venezuelan attorney hired by the Trustee to perform such service. As clearly shown by plaintiff's exhibits, from December 23 to December 27, 1996, Mr. Escalante served each defendant personally through an authorized officer. (Docket # 9, Exhibits 1–5). We also find that FOGADE was properly served, pursuant to 28 U.S.C. § 1608(b). As a district court recently noted that "[s]ection § 1608(b) provides a looser standard for service upon an agency or instrumentality, including simple delivery 'if reasonably calculated to give actual notice.'" *Underwood v. The Republic of Tanzania*, 1995 WL 46383; § 1608(b)(3); *see also Banco Metropolitano v. Desarrollo de Autopistas*, 616 F.Supp. 301, 304 (S.D.N.Y.1985).

The Third Circuit has noted that "[r]ather than making a service on foreign instrumentalities a rigid, technical, or cumbersome procedure, Congress sought to facilitate the ability of private plaintiffs to serve foreign entities. In addition, Congress wished to insure that the sovereign owner would receive actual notice." *Velidor v. L/P/G Benghazi*, 653 F.2d 812 (3rd Cir.1981). Thus, once courts have determined that defendants received actual notice, they have allowed the case to proceed. *See Sherer v. Construcciones Aeronauticas, S.A.*, 987 F.2d 1246 (6th Cir.1993).

Plaintiff argues, and defendant FOGADE does not dispute that it received actual notice of the pending lawsuit. Accordingly, the defendants' motion to dismiss for lack of proper service is **DENIED.**

#### Personal Jurisdiction/Minimum Contacts

■ As noted previously, BPI–Puerto Rico was an international banking entity established in Puerto Rico on February 2, 1992, pursuant to Law No. 52 of August 11, 1989 known as the Regulatory Law of the International Banking Center ("Law 52"). This law was specifically designed to provide access for foreign institutions to the Puerto Rican financial market. Plaintiff alleges that the first five defendants, as shareholders of Banco Progreso, took advantage of the benefits provided by the laws of Puerto Rico, in order to establish Banco Progreso in Puerto Rico for pecuniary purposes.

■ The complex issue of personal jurisdiction relates to a court's power over the

defendant. Whenever defendants challenge the Court's in personam jurisdiction, the plaintiff bears the burden of proving that jurisdiction lies in the forum state. *Sawtelle v. Farrell,* 70 F.3d 1381 (1st Cir.1995). Courts usually employ a three-prong test to determine the existence of personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. *Foster–Miller,* 46 F.3d at 144. (quoting *Pleasant Street I,* 960 F.2d at 1089). This test of the defendant's minimum contacts is "highly idiosyncratic" and must be made on a case-by-case basis. *Pritzker,* 42 F.3d at 60.

> *Sawtelle* at 1389.

The First Circuit recently stated in *Rodriguez v. Fullerton,* 115 F.3d 81 (1st Cir.1997): "the [test to establish personal jurisdiction] most commonly employed in the early stages of litigation, is the prima facie standard. Under it, a suitor, in order to stave off defeat, 'must make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution.'" *Id.* at 84 (citing *Boit v. Gar-Tec. Prods. Inc.,* 967 F.2d 671, 675 (1st Cir. 1992)). The Court continued: "[w]hen it employs the prima facie standard, a district court does not act as a fact finder; to the contrary, it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." *Id.*

Upon application of the prima facie standard, and considering all of plaintiff's assertions as true, this Court may conclude that plaintiff's fraud claims directly arose out of, or related to, the defendant-shareholders' forum-state activities. Plaintiff has also made a colorable claim that the defendants BPI S.A.C.A., Banco Republica, Sofilatin, Seguros Progreso and Latinoamericana purposefully availed themselves of the privilege of conducting activities in Puerto Rico, thereby invoking the benefits and protections of the Commonwealth's laws and making the defendants' involuntary presence before the Commonwealth's courts foreseeable. Finally, a review of the circumstances alleged in the complaint leads this Court to conclude that the exercise of personal jurisdiction over defendant-shareholders would be reasonable. *See Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 717 (1st Cir.1996).

■ Personal jurisdiction, however, may not attach against defendant FOGADE. Plaintiff claims that FOGADE not only has minimum contacts as the successor shareholder of the other five defendants, but also that the acquisition of shares from the other corporations establishes minimum contacts in Puerto Rico. We disagree. Plaintiff has failed to allege any acts conducted by FOGADE in Puerto Rico or any conduct which demonstrates FOGADE's purposeful availment of the laws of Puerto Rico and its concomitant benefits and protections. FOGADE's acquisition of the defendant corporations pursuant to a legislative decree by the Republic of Venezuela, without more, does not justify the exercise of personal jurisdiction. Thus, the Court concludes that the exercise of personal jurisdiction by this Court over FOGADE would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

## Defendants May Invoke the Protection of the Foreign Sovereign Immunities Act

Plaintiff asserts, and defendant does not dispute, that FOGADE is a "government entity, agency or corporation organized in the country of Venezuela." Complaint, ¶ 2.8. Plaintiff also avers that FOGADE is the sole and successor shareholder of the other defendants, all of which have their principal place of business in and are incorporated under the laws of the Republic of Venezuela. *Id.,* ¶ 2.1–2.8. FOGADE and the other defendants are thus "foreign states" within the meaning of the Foreign Sovereign Immuni-

ties Act of 1976 (F.S.I.A.), 28 U.S.C. §§ 1330, 1602–1611. *See Lopez v. Gobierno de la Capital v. Betterroads Asphalt Corp.*, 855 F.Supp. 34, 35 (D.Puerto Rico 1994) (entities the majority of whose shares or other ownership interest is owned by a foreign state are themselves considered "foreign states."). The issue before the Court is whether, according to the facts of the instant case, FOGADE and the other defendants are entitled to sovereign immunity pursuant to the F.S.I.A.

The F.S.I.A. provides the exclusive source for obtaining jurisdiction over foreign states in United States courts. "Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S.Ct. 1471, 1476, 123 L.Ed.2d 47 (1993). Plaintiff claims that FOGADE is subject to jurisdiction because it falls within the purview of the commercial activity exception to sovereign immunity. 28 U.S.C. § 1605.

■ The burden-shifting framework to analyze a sovereign immunity defense is as follows. Sovereign immunity is an affirmative defense and as such the foreign state bears the ultimate burden of proving, by a preponderance of the evidence, immunity. *See Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir.1987), *cert. denied*, 484 U.S. 976, 108 S.Ct. 486, 487, 98 L.Ed.2d 485 (1987). Initially, there exists a presumption that "actions taken by foreign states or their instrumentalities are sovereign acts and thus are protected from the exercise of our jurisdiction, unless one of the F.S.I.A.'s exceptions to immunity applies." *Joseph v, Office of the Consulate General of Nigeria*, 830 F.2d 1018, 1021 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). The opposing party then bears the burden of moving forward by producing evidence that there is an applicable exception to sovereign immunity. *Id.* Once that burden is met, the burden then shifts to the foreign state who "bears the burden of proving by a preponderance of the evidence that the exception does not apply." *Id.* Plaintiff invokes

the "commercial activity" exception of the F.S.I.A., claiming that defendant FOGADE's acquisition of the other corporations constituted a commercial activity which is not shielded by the immunity statute. We proceed to examine such contention.

**Commercial Activity Exception**

The commercial activity exception to sovereign immunity provides in pertinent part that:

> "[a] foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

28 U.S.C.A. § 1605(a)(2).

Thus, this exception requires a two-prong analysis: (1) the alleged conduct must be a commercial activity; and (2) there must be a nexus between Plaintiff's action and the commercial activity. *See Saudi Arabia*, 507 U.S. at 356, 113 S.Ct. at 1477. In sum, to fall within this exception, FOGADE must have engaged in commercial activity which is related to plaintiff's suit. The rationale underlying such a holding is the definition given to a commercial activity. An activity is commercial in nature if a private actor could take part in that type of activity. *Id.*

■ Defendant argues, and we agree, that the suit against FOGADE relates to a public, governmental act. FOGADE ("Fondo de Garantia de Depositos y Proteccion Bancaria") is a semiautonomous governmental agency of the Republic of Venezuela. It is the Federal Deposit Insurance Corporation of the Republic of Venezuela with functions and duties equivalent to those of the United States FDIC.

When Venezuela experienced a severe banking crisis in 1994, FOGADE intervened to bolster troubled banks and financial insti-

tutions.[2] Included among these institutions were the corporations named as defendants in this case. Initially, FOGADE, which was funded by the Central Bank of Venezuela, channeled funds to these and other financial institutions that had cash flow problems. The crisis grew so large, however, that at mid-year, FOGADE lacked sufficient assets to guarantee new loans and it was forced to shut down many of the banks that were experiencing problems. *Id.* The defendant corporations, however, continued to operate.

In June of 1994, a Financial Emergency Board, composed of the Central Bank, the Superintendency of Banks, FOGADE, and other financial institutions, was set up to better coordinate the actions of the various institutions involved in managing the banking crisis. As the crisis continued, the Board took a series of steps, including making agreements with the defendant corporations to restore their accumulated losses and to put up the capital necessary for their continued operations. *Id.* In the end, however, the defendants were unable to implement plans for recapitalization. *Id.* The Board ordered FOGADE to purchase their shares for one Bolivar a share, and to either liquidate their assets or sell the corporations at public auctions. *Id.* At present, all of the defendants are being liquidated, with the exception of Banco Republica. Banco Republica is in the process of being sold by FOGADE at public auction in accordance with Venezuela's Emergency Financial Law.

Since that time, and as prescribed by the Venezuelan Financial Board, FOGADE has managed the assets of the defendant companies in accordance with the Emergency Financial Laws of the Republic of Venezuela. *Id.* These actions, which form the basis of FOGADE's involvement in this suit, are quintessential governmental acts. *Id. Banco*

*Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). *Week v. Cayman Islands,* 983 F.2d 1074 (7th Cir.1992)(chartering, oversight and regulations of companies are core governmental functions.) Plaintiff claims that FOGADE's acquisition of the defendant corporations is the type of activity which a private actor could perform, since its acquisition resulted from "a regular course of commercial conduct or a particular transaction or act." We disagree. The economic disturbances leading up to and surrounding the acquisition of the corporations, coupled with the direct legislative involvement which led to FOGADE's acquisition, unequivocally demonstrate the public nature of FOGADE's conduct.

In view that all other defendants are also considered "foreign states" pursuant to 28 U.S.C. § 1603[3], the Court concludes that all defendants are entitled to the protection conferred by the F.S.I.A. In view of the above discussion, plaintiff's complaint against defendants Banco Progreso S.A.C.A., Banco Republica, Sofilatin, Seguros Progreso, Latinoamericana and FOGADE is hereby **DISMISSED.** Judgment shall follow accordingly.

**SO ORDERED.**

---

2. Defendants requests the Court to take judicial notice of the fact that the Venezuelan banking and financial system suffered a severe crisis beginning around January 1994. F.R.Evid. 201. Joseph Mann, "Caracas closes 8 finance houses." The Financial Times, June 15, 1994; Joseph Mann, "Venezuela banking pay out raises fears," The Financial Times, June 17, 1994; Joseph Mann and Stephen Fidler, "Caracas bank closures under fire." The Financial Times, June 16, 1994. Upon review of the pertinent documents

cited in their motion, defendants' request is granted.

3. See *Alifieris v. American Airlines, Inc.* 523 F.Supp. 1189 (E.D.N.Y.1981) (commercial entities owned by foreign states are intended to be afforded the same protections as foreign governments under the Foreign Sovereign Immunities Act.)