**BROCK SUPPLY CO., Plaintiff,**

v.

**MOULDING ASSOCIATES, INC., Defendant.**

**No. Civ. 99–1796(JP).**

United States District Court, D. Puerto Rico.

Jan. 31, 2000.

Jaime E. Sifre Rodriguez, Sanchez Betances & Sifre, Hato Rey, PR, for plaintiff.

Diego A. Ramos, Fiddler, González & Rodríguez, San Juan, P.R., Dana M. Campbell, Owens, Clary & Aiken, L.L.P., Dallas, TX, for defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

Before the Court is Defendant Moulding Associates, Inc.'s ("MAI") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (**docket No. 2**) and Plaintiff Brock Supply Company's ("Brock") Opposition thereto (docket No. 8). Brock brings this action in diversity for violation of Puerto Rico Law No. 75, P.R.Laws Ann. tit. 10, §§ 278–278(d). Brock alleges that it entered into an exclusive distributorship agreement with MAI for the distribution of MAI products in Puerto Rico, and that MAI unilaterally terminated that agreement without just cause in contravention of Law 75. MAI moves to dismiss the action under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue; in the alternative, MAI argues that the case should be transferred to the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a).

## II. LEGAL STANDARD

A plaintiff has the burden of proving the facts necessary to show the existence of personal jurisdiction over the defendant. *See Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997); *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.1995); *Boit v. Gar–Tec, Inc.,* 967 F.2d 671, 675 (1st Cir. 1992). In ruling on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, as is the case here, dismissal is only proper if the plaintiff has failed to make a prima facie showing of jurisdiction. In making a prima facie showing, the Court takes specific facts affirmatively alleged by the plaintiff as true and "construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998) (citing *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994)). The Court then "add[s] to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Id.*

## III. PLAINTIFF'S ALLEGATIONS

Brock is a Florida corporation engaged in the business of distributing, selling and marketing doors and other products. Brock has its principal place of business in Coral Springs, Florida. MAI, a door manufacturer and seller, is a Texas corporation with its principal place of business in Garland, Texas.

Brock alleges that its relationship with MAI, and MAI's business activities in Puerto Rico, began in 1996. Brock indicates that its salesperson in Puerto Rico, Ricardo Infanzón ("Infanzón"), marketed, sold, and distributed MAI doors in Puerto Rico from 1996 to 1998. Brock attaches as evidence (1) a declaration of Infanzón, a Brock salesperson in Puerto Rico, attesting to his activities in Puerto Rico on behalf of MAI, and to his close collaboration with MAI agents and representatives Raford Cade ("Cade") and Don Jensen

("Jensen"); (2) price schedules and technical information for MAI products sold in Puerto Rico; (3) an invoice dated August 21, 1997 for a sale by Infanzón and Jensen of 455 doors to a Puerto Rico customer, totaling $115,405.00; (4) an invoice dated February 21, 1998 for a sale by Infanzón and Jensen of 455 doors to a Puerto Rico customer, totaling $121,865.00; (5) a letter dated December 8, 1997 to Brock from MAI's Roger Cade indicating that a shipment of doors purchased by a Puerto Rico customer had arrived in San Juan from Indonesia and that the documentation process and customs clearing was being handled directly by MAI through a local agent; (6) a facsimile dated December 16, 1997 from MAI's CEO Raford Cade to a Puerto Rico customer following up on a door order; (7) a letter dated February 8, 1999 from Raford Cade to Brock indicating that MAI made a mistake in agreeing to work with Brock to exclusively sell MAI doors in the Caribbean, and that MAI would, after 60 days, ship doors directly to any container buyer in the Caribbean; and (8) a letter dated March 1, 1999 from Raford Cade explaining that MAI canceled its exclusive agreement with Brock and set up its own direct distributors in Puerto Rico.

In his declaration, Infanzón states that he worked closely with Raford Cade and Jensen in promoting the sale of MAI products in Puerto Rico, and that Jensen traveled to Puerto Rico on occasion to promote MAI products to Brock clients. (Decl. of Infanzón, ¶ 6.) Infanzón describes a number of sales in Puerto Rico, supported by documentation, that were brought to fruition by the joint efforts of Infanzón and Jensen. (*Id.,* ¶¶ 7–11.) During his visits to Puerto Rico, Jensen provided to Brock and Infanzón price schedules, brochures, and technical specifications for MAI products in Puerto Rico. (*Id.,* ¶¶ 8–9, 13.) Infanzón declares that MAI directly handled the shipping of its products to Puerto Rico, and that MAI and its representatives customarily followed up on these shipments

personally or through Infanzón. (*Id.*, ¶¶ 12–13.)

In October 1998, Brock avers that MAI appointed Brock as its exclusive distributor of MAI doors in Puerto Rico. (Compl.¶ 5.) Pursuant thereto, Brock coordinated the development of the Puerto Rico market with respect to the distribution, sale, and marketing of MAI products. (Compl.¶¶ 7–8.) Brock then states that by letter dated February 8, 1999, MAI abruptly canceled the exclusive distribution agreement between the two parties without just cause. (Plf's Opp., Exh. H.) Brock was told to consider the letter as a "60–day notice of termination of an exclusive marketing arrangement of MAI doors into the Caribbean. . . ." (*Id.*)

On March 1, 1999, MAI sent a second letter to Brock, explaining in greater detail the rationale behind the cancellation of the agreement. Specifically, the letter states that the agreement had not worked well for MAI because once Brock added its gross margin to the cost of the doors, MAI's products were no longer competitively priced in the Puerto Rico market. (Plf's Opp., Exh. I.) The letter further indicates that MAI chose to set up its own direct distributors in Puerto Rico because selling directly to the island would better serve MAI's customers there. (*Id.*)

## IV. PERSONAL JURISDICTION OVER MAI

MAI argues that personal jurisdiction is lacking because the alleged breach of contract did not take place in Puerto Rico, MAI's contacts with Puerto Rico were not sufficiently systematic and continuous to justify general jurisdiction, and the Complaint fails to allege that any specific conduct purposefully directed toward Puerto Rico injured Brock. MAI emphasizes that in Puerto Rico, MAI own no real property, maintains no sales office, operates no manufacturing or distribution facilities, maintain no bank accounts, has no telephone numbers, and has no employees, officers or directors. (Aff. of Raford Cade, ¶ 10.)

MAI further states that most of the doors shipped from MAI to Brock were sent from Texas to Florida, not directly to Puerto Rico. (*Id.*, ¶ 11.) Finally, MAI points out that from September 21, 1998 to February 17, 1999, MAI sales exceeded $4 million, but only $64,036.19 (1.4%) of those sales were to Brock's Puerto Rico customers. (*Id.* at ¶ 20.)

Personal jurisdiction may be either general or specific. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994) (quoting *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992)). Specific jurisdiction, on the other hand, focuses on the particular conduct at issue and looks to whether the interaction between that conduct and the forum is legally sufficient to justify the exercise of jurisdiction over the defendant. *See Foster–Miller*, 46 F.3d at 144. A court exercises specific jurisdiction over a party when the controversy is related to or "arises out of" a defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8., 80 L.Ed.2d 404 (1984).

Personal jurisdiction implicates a court's power over a defendant. *See Foster–Miller*, 46 F.3d at 143. A federal court exercising diversity jurisdiction is the "functional equivalent of a state court sitting in the forum state," and therefore our analysis begins with Puerto Rico's long arm statute. *Ticketmaster–NY*, 26 F.3d at 204 (citing *General Contracting & Trading Co. v. Interpole Inc.*, 940 F.2d 20, 23, n. 4 (1st Cir.1991)); *Cummings v. Caribe Marketing & Sales Co., Inc.*, 959 F.Supp. 560, 566 (D.Puerto Rico 1997). Puerto Rico's long arm statute reads, in pertinent part:

4.7 Service on a person not domiciled in Puerto Rico

(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through his agent; or

(2) Participated in tortious acts within Puerto Rico personally or through his agent;

32 P.R.Laws Ann.App. III, R. 4.7. Puerto Rico's long-arm statute has been interpreted as permitting the exercise of personal jurisdiction "to the full extent of constitutional authority." *Cummings,* 959 F.Supp. at 566 (citing *Mangual v. General Battery Corp.,* 710 F.2d 15, 19 (1st Cir.1983)); *Viacom Int'l, Inc. v. Three Star Telecast Inc.,* 639 F.Supp. 1277, 1279 (D.Puerto Rico 1986) (citing *A.H. Thomas Co. v. Superior Court,* 98 P.R.R. 864, 870 n. 5 (1970)). Therefore, the "inquiry into the requirements for state-law jurisdiction is [ ] telescoped into our due process constitutional analysis." *Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9, 12 (1st Cir.1986); *see also Pritzker,* 42 F.3d at 60.

■ To satisfy constitutional due process, the Court must engage in a tripartite inquiry. *See Massachusetts Sch. of Law,* 142 F.3d at 35; *Ticketmaster–NY,* 26 F.3d at 206. First, a plaintiff must show that " 'minimum contacts' exist between the defendant and forum state." *Ticketmaster–NY,* 26 F.3d at 206 (citing *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872). The inquiry into minimum contacts is "highly idiosyncratic, involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." *Pritzker,* 42 F.3d at 60. Second, a plaintiff must show that the defendant's contacts with the forum state are deliberate, and that the defendant "purposefully avail[ed] itself of the privilege of conducting activities with the

forum state." *Ticketmaster–NY,* 26 F.3d at 206 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court of Calif.,* 480 U.S. 102, 109–10, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987). Finally, the Court must determine whether exercising jurisdiction over the defendant would be reasonable. *See Noonan v. The Winston Co.,* 135 F.3d 85, 89 (1st Cir.1998); *see also Phillips Exeter Academy v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 288 (1st Cir.1999). All three elements of the inquiry must be satisfied to support a finding of jurisdiction. *See Phillips Exeter,* 196 F.3d at 288.

## A. General Jurisdiction

The Court will first determine whether it may exercise general jurisdiction over MAI. In the area of general jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The standard for general jurisdiction is "considerably more stringent" than the standard for specific jurisdiction which is satisfied upon a showing of minimal contacts alone. *Noonan,* 135 F.3d at 93 (citing *Glater v. Eli Lilly & Co.,* 744 F.2d 213, 216 (1st Cir.1984)).

In support of its contention that MAI is subject to general jurisdiction in Puerto Rico, Brock points to MAI's business relationship with the forum from 1996 to the present. Since 1996, Brock alleges that MAI has targeted its business operations and activities to Puerto Rico by actively promoting and selling its products here, by supplying Brock with price schedules and other information to facilitate the Brock's service of the Puerto Rico market, by handling the shipping of its products to Puerto Rico, and by sending its own agents to the island to market MAI doors. (Decl. of Infanzón, ¶¶ 5–13.) In addition, beginning

in early 1999, MAI set up its own direct distributors in Puerto Rico.

MAI counters that it does not engage in the continuous and systematic pursuit of general business activities in Puerto Rico such as would justify subjecting it to general jurisdiction. MAI emphasizes that in Puerto Rico it maintains no office, has engaged in no manufacturing, holds no property, and is not registered to do business. (Aff. of Raford Cade, ¶¶ 4–9.)

The only case Brock cites to support a finding of general jurisdiction is *Helicopteros.* In *Helicopteros,* the U.S. Supreme Court held that a Colombian corporation had insufficient contacts with the state of Texas to satisfy the requirements of due process for purposes of exercising personal jurisdiction over the corporation. 466 U.S. at 418–19, 104 S.Ct. at 1874. The Colombian corporation's contacts with Texas consisted of one trip to the forum by the corporation's chief executive officer to negotiate a transportation services contract, acceptance of checks drawn on a Texas bank, the purchase of helicopters and equipment from a Texas manufacturer and related training trips to the forum. *See id.* at 410–12, 104 S.Ct. at 1870–71. Plaintiffs brought a wrongful death action against the corporation in Texas after one of its helicopters crashed in Peru, killing all of the passengers on board, including four U.S. citizens. *See id.* at 410, 104 S.Ct. at 1870.

The Court held one trip by a corporation officer was not "continuous and systematic," and that acceptance of checks drawn from a Texas bank involved no volitional conduct directed toward the forum. *See id.* at 416–17, 109 S.Ct. at 1873. The Court further held that purchases and related trips, standing alone, could not serve as a sufficient basis for the assertion of jurisdiction over a defendant. *See id.* at 417, 109 S.Ct. at 1873–74 (citing *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923)).

In the case *sub judice,* although MAI has more contacts with the forum than the defendant in *Helicopteros,* the nature and quality of MAI's contacts with Puerto Rico do not support a finding of general jurisdiction. In *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the U.S. Supreme Court upheld the assertion of general jurisdiction where the president and general manager of the defendant corporation maintained an office in the forum state from which he carried out a continuous and systematic part of the corporation's general business. The exercise of general jurisdiction was fair and just because he kept files and held directors meetings in the forum, sent business correspondence from the forum, held two active bank accounts from which employees were paid, engaged a forum State bank as a transfer agent, and supervised company polices from the forum office. *See id.* at 438, 445, 72 S.Ct. at 414, 418. Because MAI's contacts with Puerto Rico are far less pervasive than those in *Perkins,* and because Brock cites no case law to support a finding of general jurisdiction on the facts before the Court, Brock has not carried its burden of making a prima facie showing of general jurisdiction.

### B. Specific Jurisdiction

#### 1. Relatedness

Brock argues that even if general jurisdiction is lacking, MAI may be forced to defend itself in Puerto Rico by virtue of specific personal jurisdiction. Where specific jurisdiction is alleged, the contacts with the forum state must be related to the defendant's forum-state activities. *See Pritzker,* 42 F.3d at 60. "[T]he relatedness test is, relatively speaking, a flexible, relaxed standard." *Id.* at 61. In this case, the claim is related to MAI's contacts with the forum. The cause of action arises out of MAI's dealings with Brock vis-a-vis Puerto Rico. Brock asserts that MAI appointed it as its exclusive distributor of MAI products in Puerto Rico, and later

terminated that agreement without Brock's consent and without just cause. The dispute between Brock and MAI over the exclusive distributorship agreement relates directly to MAI's ongoing marketing, sale, and distribution of its products in Puerto Rico, and MAI's desire to maximize its profitability in the Puerto Rico market. Brock therefore has satisfied the relatedness prong. *See id.; Mohajer v. Monique Fashions,* 945 F.Supp. 23, 27 (D.Puerto Rico 1996).

## 2. Purposeful Availment

The Court must next determine whether MAI has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *163 Pleasant Street,* 960 F.2d at 1088 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240). The cornerstones of this inquiry are voluntariness and foreseeability. *See Ticketmaster–NY,* 26 F.3d at 207. The defendant's contacts with the forum must be voluntary, in the sense that they are not based on the unilateral actions of a third party. *See Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 716 (1st Cir.1996). In addition, the nature of the contacts must be such that the defendant "should reasonably anticipate being haled into court [in the forum]." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

The Court finds that MAI has purposefully availed itself of the forum. First, MAI's contacts with Puerto Rico were clearly voluntary. According to Brock, MAI provided Brock with materials to facilitate the sale of MAI products in Puerto Rico. Brock further states that MAI representatives visited the island on several occasions to assist in consummating sales of MAI products in coordination with Brock salesperson Infanzón. MAI typically followed up on a sale, according to Brock, by sending a communication to the Puerto Rico customer either directly or through

Infanzón, and also managed the shipping of the products to the island. Thus, MAI's contacts with the forum were not based on the unilateral actions of a third party.

Second, MAI's ongoing relationship with Brock and its salesperson in Puerto Rico from 1996 to 1998, the numerous sales of MAI products to the island as evidenced by the sales invoices attached to Brock's Opposition, and MAI's intention to continue supplying its products to the Puerto Rico market through direct distribution, renders haling MAI into Court in Puerto Rico foreseeable. In sum, MAI's contacts with Puerto Rico all relate to its efforts to derive economic benefits from doing business in Puerto Rico. *See Nowak,* 94 F.3d at 717 (purposeful availment prong satisfied where foreign corporation purposefully derived economic benefits from its forum-state activities even though corporation had no employees, shareholders, or assets in forum). Brock therefore has satisfied its burden of showing purposeful availment.

## 3. Reasonableness

Finally, the Court will assess the reasonableness of exercising jurisdiction over MAI. In doing so, the Court must weigh five criteria, what the First Circuit has termed the "gestalt factors":

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Ticketmaster–NY,* 26 F.3d at 209 (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184). These factors serve to assist the court in achieving substantial justice. *See id.* In close cases, they can tip the constitutional balance in favor of the defendant to defeat jurisdiction. *See id.* The gestalt factors are to be taken into account in light of the strength or weakness of the plain-

tiff's showing on relatedness and purposeful availment—the weaker the plaintiff's showing on those elements, the less a defendant need show to defeat jurisdiction on the grounds of unreasonableness. *See id.* at 210 (describing the "sliding scale" nature of the reasonableness inquiry).

### a. *Defendant's burden of appearing*

The purpose of the first gestalt factor—defendant's burden of appearing—is to allow the Court to prevent harassing litigation. *See Nowak,* 94 F.3d at 718. As it will almost always be burdensome for a defendant to defend itself in a foreign jurisdiction, it must be shown that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." *Pritzker,* 42 F.3d at 64. In the case before the Court, although it will be inconvenient for MAI, a Texas corporation, to defend this case in Puerto Rico, MAI has not demonstrated any unique or special circumstances to show that the burden on it to appear in Puerto Rico would be constitutionally significant. Nor is there evidence to suggest that this lawsuit was brought for the purpose of harassing MAI. Accordingly, this factor does not weigh against the Court's exercise of jurisdiction.

### b. *Interest of the forum*

The First Circuit Court has observed that "[t]he purpose of [this] inquiry is not to compare the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum has an interest." *Foster–Miller,* 46 F.3d at 151. A forum state has a demonstrable interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders. *See Ticketmaster–NY,* 26 F.3d at 211. Here, neither the breach itself nor the tortious injury occurred in Puerto Rico. The alleged breach of the exclusive distributorship agreement took place in communications between MAI's headquarters in Texas and Brock's headquarters in Florida. Moreover, the effects of the breach are felt in Florida, where Brock's corporation is domiciled. Puerto Rico therefore has no real interest in adjudicating this dispute.

### c. *Plaintiff's convenience*

The third gestalt factor to be considered is Brock's interest in obtaining convenient and effective relief. A plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience. *See Foster–Miller,* 46 F.3d at 151; *Ticketmaster–NY,* 26 F.3d at 211. Here, some of Brock's witnesses are in Puerto Rico, and some documentation may also be located in the forum. Other Brock witnesses are in Florida. Thus, Brock could have chosen either Florida or Puerto Rico for purposes of convenience. This factor therefore weighs in favor of jurisdiction.

### d. *Administration of justice*

The Court next must determine whether the interest of the judicial system in achieving the most effective resolution of the controversy militates against the exercise of jurisdiction. The parties have not raised any special considerations in this vein. The Court finds that this factor "does not cut in either direction." *Ticketmaster–NY,* 26 F.3d at 211.

### e. *Policy considerations*

The final gestalt factor looks to the interests of the affected governments in substantive social policies. *See Nowak,* 94 F.3d at 719. Brock's cause of action is brought under Puerto Rico Law 75. Law 75, or the Dealer's Act, is said to embody "strong public policy." *Medina & Medina v. Country Pride Foods, Ltd.,* 858 F.2d 817, 820 (1st Cir.1988). Law 75 was enacted by the Puerto Rico Legislative Assembly "to protect the interests of commercial distributors working in Puerto Rico" by leveling the playing field between financial unequals. *A.M. Capen's Co., Inc. v. American Trading & Prod. Corp.,* 74 F.3d 317, 321 (1st Cir.1996) (quoting *Ballester Her-*

*manos, Inc. v. Campbell Soup Co.*, 797 F.Supp. 103, 106 (D.Puerto Rico 1992)). The Legislature observed that dealers in Puerto Rico were particularly vulnerable to summary termination once they had established a favorable market for a principal's products. *See id.* Moreover, nothing in the statute requires a dealer to be a Puerto Rico resident, to be authorized to do business in Puerto Rico, or to have a place of business such as an office or warehouse on the island. *See id.* at 322. As Puerto Rico has "a substantial interest in seeing that distributorships are not arbitrarily terminated," *id.* at 321–22, this factor weighs in favor of exercising jurisdiction.

On balance, the Court finds that the gestalt factors weigh, albeit lightly, in favor of asserting jurisdiction. When considered in combination with the Brock's adequate showing on the first two elements of the tripartite due process inquiry, the Court concludes that the exercise of jurisdiction in Puerto Rico is reasonable. The Court emphasizes, however, that it merely holds that Brock has made a sufficient prima facie showing of jurisdiction for purposes of this 12(b)(2) motion to dismiss. Brock continues to "bear[ ] the ultimate burden of demonstrating that personal jurisdiction over the defendant exists by a preponderance of the evidence...." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (1996 Supp.); *see also Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 8 (1st Cir.1986).

## V. VENUE

■ MAI argues that venue is not proper in Puerto Rico pursuant to section 1391(a)(2) and moves to transfer the case to the Northern District of Texas under section 1404(a). Section 1391(a)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the events or omissions giving rise to

the claim occurred, or a substantial part of the property that is subject to the action is situated...." 28 U.S.C. § 1391(a)(2) (West Supp.1999). The Court observes that given the facts of this case and the defenses raised by MAI, a substantial part of the events giving rise to the claim occurred in Puerto Rico. Brock alleges that MAI breached its contractual obligations by failing to honor an exclusive distributorship agreement to serve to Puerto Rico market. Accordingly, venue is proper in Puerto Rico.

Further, the Court declines to transfer the case to the Northern District of Texas pursuant to section 1404(a). According to MAI, the case should be transferred because relevant correspondence and invoices were originated or were received in Texas. The Court finds this an insufficient justification for transfer.

## VI. CONCLUSION

In view of the foregoing, the Court hereby **DENIES** MAI's motion to dismiss for lack of personal jurisdiction and improper venue.

**IT IS SO ORDERED.**