Aurelio **SALGADO–SANTIAGO,** et al. **Plaintiffs**

v.

**AMERICAN BALER CO.,** et al. **Defendants**

No. Civ. 01–1264(SEC).

United States District Court, D. Puerto Rico.

May 26, 2005.

Jorge M. Suro–Ballester, San Juan, PR, for Plaintiffs.

Fernando J. Fornaris–Fernandez, Cancio, Nadal, Rivera & Diaz, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Third Party Defendant's (herein "American Baler") motion for summary judgment for lack of personal jurisdiction and/or to dismiss for failure to state a claim upon which relief can be granted (Docket # 40).[1] Third Party Plaintiff (herein "Goettsch") has filed an opposition (Docket # 56). American Baler replied (Docket # 76) and Goettsch surreplied (Docket # 79). After examining the parties' filings, the case record and the applicable law, we find that American Bailer's motions should be **DENIED**.

### Procedural Background

Aurelio Salgado–Santiago, his wife Carmen I. Pagán and the conjugal partnership constituted between them filed a products liability action claiming that American Baler, a corporation organized in the state of Ohio, designed, manufactured, distributed and/or sold a defective extrusion baler which caused them damages (Docket # 1 at ¶ 8).[2] Allegedly, as a result of said defective extrusion baler, Co-plaintiff Salgado–Santiago was involved in an accident

---

1. On October 17, 2002 the Court issued an Opinion and Order on said motion, inadvertently deeming it unopposed and granting summary judgment (Docket # 50). However, the next day Goettsch filed a motion seeking the Court's reconsideration alleging that it had previously requested extensions of time to oppose American Baler's motion for summary judgment (Dockets ## 48 & 49). Although said motions for extension of time were not granted by the Court, the Court vacated its previous judgment, since after examining Goettsch's motion, the Court concluded that there could be evidence as to American Baler's contacts with Puerto Rico (Docket # 54). There followed Goettsch's opposition to American Baler's motion, American Baler's reply and Goettsch's sur-reply.

2. A baler is a machine used for packing, compressing, wrapping or making bundles. RANDOM HOUSE UNABRIDGED DICTIONARY, 2nd Ed.

which caused him to lose four fingers of his left hand, fracture his left wrist and injure other areas of his body (Docket # 1 at ¶ 9). Plaintiffs further contend that, as a result of this event, Co-plaintiff Salgado–Santiago sustained serious and disabling injuries to his left upper extremity, and has suffered physical as well as psychological injuries.

On May 17, 2001 American Baler filed a motion for summary judgment for lack of personal jurisdiction and/or to dismiss for failure to state a claim upon which relief can be granted (Docket # 7). There followed Plaintiffs' motion for voluntary dismissal without prejudice of their claims against American Baler (Docket # 16). Plaintiffs then filed an amended complaint, this time naming Goettsch as defendant and alleging that Goettsch is liable to Plaintiffs for Co-plaintiff Salgado–Santiago's accident since they "distributed and/or sold" the extrusion baler manufactured by American Baler to Co-plaintiff Salgado–Santiago's employer, Packaging Unlimited, Inc. (herein "Packaging"), a company located in Guaynabo, Puerto Rico (Docket # 19 at ¶ 8). Plaintiffs allege that Goettsch, a corporation organized under the laws of Puerto Rico, is liable for: (a) negligence; (b) strict liability in tort including manufacturing and/design defect, inadequate and insufficient warnings and/or instructions; and © negligent misrepresentation (Docket # 19 at ¶ 18).

Goettsch proceeded to answer the amended complaint (Docket # 24) and file the instant third party complaint against American Baler and Packaging (Docket # 27). In the third party complaint Goettsch alleges that since American Baler

was the manufacturer and/or designer of the defective extrusion baler, it is liable to Goettsch for any amount that Goettsch becomes obliged to pay to Plaintiffs for their claims in the amended complaint (Docket # 27 at ¶ 7).[3] American Baler has once again filed a motion for summary judgment alleging that this Court does not have personal jurisdiction over it and, alternatively, that the third party complaint fails to state a claim upon which relief can be granted (Docket # 40).

In support of its motion requesting dismissal of Goettsch's claims based on lack of personal jurisdiction, American Baler argues that: (I) the alleged defective extrusion baler was sold by it to a third party unrelated to the instant matter and in the state of Tennessee more than two (2) decades before the accident took place in Puerto Rico (Docket # 40 at ¶ 13); (ii) the fact that said product reached the Puerto Rico market cannot by itself provide a Puerto Rico court with personal jurisdiction over it (Docket # 40 at ¶¶ 14–15); (iii) American Baler has not engaged in continuous and systematic activities in Puerto Rico that would warrant general jurisdiction (Docket # 40 at ¶¶ 18–19); and (iv) American Baler does not have minimum contacts with the Puerto Rico forum to meet the specific jurisdiction standard (Docket # 40 at ¶¶ 20–25). Goettsch counters that American Baler has minimum contacts with the Puerto Rico forum to warrant this Court's specific jurisdiction over it (Docket # 56).

In support of the motion requesting dismissal for failure to state a claim, American Baler argues that, under the products liability doctrine in Puerto Rico, Goettsch

---

(1983). As alleged by Plaintiffs in the amended complaint, the baler at issue in this case is model # 10537R or 10557R and serial # 692710557R–1080 (Docket # 1 at ¶ 8).

**3.** Goettsch's claims against Packaging were dismissed since this Court found that Packaging is statutorily immune from suit pursuant to the Puerto Rico Workers' Accident Compensation Act (Dockets ## 67 & 68).

failed to state a cognizable claim because it failed to identify the defect on the extrusion baler which caused the alleged damages (Docket # 40 at ¶ 36). In response, Goettsch states that the notice pleading standard is applicable to products liability claims. Accordingly, Goettsch avers that only a "short and plain statement" is required to state a claim for products liability and that they have met said requirement in their third party complaint (Docket # 56).

## Standard of Review

### I. Lack of Personal Jurisdiction

■ "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (*quoting Internat'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Therefore, in order for a court to be able to make a binding decision, the court must have personal jurisdiction over each party to the case. *Rodriguez v. Dixie S. Indus., Inc.,* 113 F.Supp.2d 242, 249 (D.Puerto Rico 2000) (*citing United States v. Swiss Am. Bank, Ltd.,* 191 F.3d 30, 35 (1st Cir.1999)). The plaintiff has the burden of proof in establishing that the court has personal jurisdiction over the defendant. *Id.* (*citing Mass. Sch. of Law at Andover v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998); *Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997)). The court then "draws the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." *Ticketmaster–N.Y., Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994). However, the court does not credit conclu-sory allegations or draw farfetched inferences. *Id.*

Having held no previous evidentiary hearing, the court typically applies a *prima facie* standard. *Rodriguez,* 115 F.3d at 83–84. Moreover, the First Circuit has ruled that unless the district court otherwise informs the parties, it is to be understood that the *prima facie* standard will be used. *Id.* Accordingly, this Court will employ the *prima facie* standard in adjudicating the present motion.

■ "To make a *prima facie* showing, the plaintiff may not rest on unsupported allegations in the pleadings; instead, it must adduce evidence of specific facts which establish personal jurisdiction." *Rodriguez,* 113 F.Supp.2d at 249 (*citing Foster–Miller, Inc. v. Babcock & Wilcox Can.,* 46 F.3d 138, 145 (1st Cir.1985); *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992)). The district court does not sit as a fact finder; rather, "it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." *Id.* (*quoting Rodriguez,* 115 F.3d at 84).

■ There are two types of personal jurisdiction: general and specific. *Mass. Sch. of Law,* 142 F.3d at 34; *Pritzker v. Yari,* 42 F.3d 53, 59 (1st Cir.1994). General jurisdiction exists when the defendant has engaged in systematic and continuous activity in said forum. *Foster–Miller,* 46 F.3d at 144 (*citing United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992)). Under this scenario the lawsuit does not have to be directly based on the defendant's contacts with the forum. *Id.* Finding general jurisdiction over a defendant is difficult because the test is stringent. "It requires a showing of 'continuous and systematic contacts' with the forum state and not merely 'minimum contacts.'" *Vizcarra Pellot v. Ford Motor*

*Co.,* 263 F.Supp.2d 303, 309 (D.Puert Rico 2003) (citations omitted).

■■■ Specific jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *United Elec. Workers,* 960 F.2d at 1088–89. In diversity jurisdiction cases, it requires a plaintiff to establish two conditions: first, that the forum has a long-arm statute which purports to grant jurisdiction over the defendant; and second, that the court's exercise of personal jurisdiction over the defendant pursuant to that statute would comport with the Constitution's strictures. *Foster–Miller,* 46 F.3d at 144; *Pritzker,* 42 F.3d at 60. With regard to the first condition, the First Circuit Court has consistently held and reaffirmed that the Puerto Rico's long-arm statute "extends personal jurisdiction as far as the Federal Constitution permits." *Pritzker,* 42 F.3d at 60. *See e.g., Dalmau–Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9, 12 (1st Cir.1986). When the state long-arm statute is coextensive with the U.S. Constitution's due process limits, the court's analysis may focus solely on the federal constitutional analysis. *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995); *Dalmau Rodriguez,* 781 F.2d at 12; *see Phillips Exeter Acad. v. Howard Phillips Fund,* 196 F.3d 284, 287 (1st Cir.1999) (approving the district court's focus on federal constitutional standards when the state long-arm statute reached to the full extent allowed under the Constitution). Thus, this Court's analysis will focus on whether exercise of jurisdiction over American Baler is constitutionally permissible.

■■■ In accordance with First Circuit Court jurisprudence, a court making a determination on the second condition, that the court's exercise of personal jurisdiction comports with constitutional strictures, should embark on a tripartite inquiry as to defendant's contacts with the forum state: relatedness, purposeful availment and reasonableness. *Sawtelle,* 70 F.3d at 1389. First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities (the "relatedness test"). *Pritzker,* 42 F.3d at 60–61 (*citing United Elec. Workers,* 960 F.2d at 1089). Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable (the "purposeful availment test"). *Id.* Third, the exercise of jurisdiction must be reasonable or comport with traditional notions of "fair play and substantial justice." *Id.; Nowak v. Tak How Inves., Ltd.,* 94 F.3d 708, 717 (1st Cir.1996) (*citing Internat'l Shoe Co.,* 326 U.S. at 320, 66 S.Ct. 154). The latter is also commonly referred to as the gestalt factors (the "reasonableness test").

■■■ This tripartite analysis must be made on a case-by-case basis. *Pritzker,* 42 F.3d at 60. There must be an affirmative finding **on each** of the three parts of the test in order to support a finding that specific jurisdiction exists. *Phillips Exeter,* 196 F.3d at 288. Additionally, the court should apply this test individually to each of the plaintiff's claims. *Id.* at 289.

■■■ The first two parts of the tripartite inquiry—relatedness and purposeful availment—are both aspects of demonstrating "minimum contacts" pursuant to *International Shoe Co.,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. *See Nowak,* 94 F.3d at 713. The relatedness test focuses on the nexus between the defendant's contact(s) with the forum and the plaintiff's cause of action. *Id.* at 714; *Sawtelle,* 70

F.3d at 1389. The court must determine whether the plaintiff's claim arises out of or is related to the defendant's conduct within the forum state. *Swiss Am.,* 191 F.3d at 36. Hence, the claim may not arise out of the general relationship between the plaintiff and the defendant. *Phillips Exeter,* 196 F.3d at 290.

The purposeful availment test focuses on whether the defendant availed itself of the privileges of conducting activities in the forum state. The First Circuit has identified two cornerstones in order to determine whether the defendant's contacts with the forum state meet the purposeful availment standard: foreseeability and voluntariness. *Ticketmaster,* 26 F.3d at 207; *Sawtelle,* 70 F.3d at 1391.

▮ The third part of the tripartite inquiry entails the analysis of the reasonableness standard or gestalt factors. These factors " 'bear upon the fairness of subjecting [nonresidents] to the authority of a foreign tribunal.' " *Sawtelle,* 70 F.3d at 1394 (*quoting United Elec. Workers,* 960 F.2d at 1088). The five (5) gestalt factors are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Id.* (*citing Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). Finally, the First Circuit has held that the reasonableness standard analysis "evokes a sliding scale" where the weaker the plaintiff's showings on the reasonableness and purposeful availment standards, the less a defendant needs to show in terms of reasonableness in order to defeat jurisdiction, and *vice versa. Id.* (*quoting Ticketmaster,* 26 F.3d at 210).

## II. Failure to State a Claim

▮ In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). *See also Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.").

▮ But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) (*quoting Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.' " *Id.*

▮ In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the for-

mer must be credited, but the latter can safely be ignored." *LaChapelle,* 142 F.3d at 508 (*quoting Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996)). *See also Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999). Moreover, Courts "will not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993).

### Applicable Law and Analysis

### I.   Lack of Personal Jurisdiction

Goettsch alleges that personal jurisdiction over American Baler is appropriate since it is has been an authorized dealer for American Baler in Puerto Rico for the past forty (40) years (Docket # 56 SCF No. 2, Ex. 1). In support for said contention and the fact that American Baler knew and consented to Goettsch's sale of American Baler products in Puerto Rico, Goettsch provided the Court with a purchase order (Docket # 56 SCF No. 5, Ex. 1–A). Furthermore, Goettsch attached a print out of American Baler's web page in which Goettsch is listed as American Baler's international dealer for Asia, Australia and Latin America[4] (Docket # 56, Ex. 1–C).

Goettsch also provided the Court with a list of nine (9) balers manufactured by American Baler that Goettsch has sold in Puerto Rico (Docket # 56 SCF No. 3, Ex. 1). Goettsch further contends that American Baler manufactured at least nineteen (19) other balers which have been sold in Puerto Rico as well (Docket # 56 SCF No. 4, Ex. 1–B).

On the other hand, American Baler admits to only "three fragmentary contacts with Puerto Rico, consisting of three spo-radic inspection and service visits to the plant of Packaging Unlimited, during 1986, 1994 and 1996." (Docket # 40 SUF Q, Exs. 4–6). During these visits American Baler representatives provided service to the alleged defective extrusion baler which caused the accident in issue. American Baler further alleges that it has never been licensed to conduct business in Puerto Rico, owned real property, advertised, owned assets or had an employee, agent, or representative in Puerto Rico (Docket # 40 SUF I, L, N & O, Ex. 1). Therefore, American Baler contends that, since its only contacts with Puerto Rico have been these sporadic service visits, the "unforeseeable" consequence that a baler sold by it to a company in Tennessee in the year 1980 reached Puerto Rico is insufficient for this Court to exercise jurisdiction over it. We agree as to *general* jurisdiction.

In this case, Goettsch has not demonstrated that American Baler has engaged in continuous and systematic activities in Puerto Rico. First, Goettsch fails to provide the dates in which the sale of the nine (9) American Baler's balers took place in Puerto Rico or how the nineteen (19) balers previously mentioned reached customers in Puerto Rico. Second, the purchase order attached as an exhibit to its motion in opposition is dated January 21, 1983, more than seventeen (17) years prior to the alleged accident in this case. Third, the service visits by the American Baler representatives took place during the years 1986, 1994 and 1996. That is, the last visit was four (4) years prior to the alleged accident. These contacts are few and far between. Thus, aside from its allegation that it has been American Baler's authorized dealer for the past forty (40) years, Goettsch has not provided the

---

**4.** Goettsch contends, and it is undisputed, that this includes the Puerto Rico market as well.

Court with further evidence of other continuous contacts by American Baler with Puerto Rico. As such, given our conclusion with respect to specific jurisdiction, we will not categorically find that American Baler's contacts with Puerto Rico are sufficient to merit a finding of general jurisdiction.

■■■ In determining whether we can exercise specific jurisdiction over American Baler we engage in the previously discussed tripartite analysis to decide whether American Baler has minimum contacts with the Puerto Rico forum. In accordance with the traditional personal jurisdiction analysis, the Court will take the facts affirmatively alleged by Goettsch as true and construe the disputed facts in the light most favorable to Goettsch without crediting conclusory allegations. *Ticketmaster*, 26 F.3d at 203; *In re San Juan Dupont Plaza Hotel Fire Litigation*, 742 F.Supp. 717, 720 (D.P.R.1990)(the record is to be construed in favor of the plaintiffs). Additionally, the Court will also give credit to the facts set forth by American Baler to the extent that these are uncontradicted. *Mass. Sch. of Law*, 142 F.3d at 34.

■■■ "The relatedness test is, relatively speaking, a flexible, relax[ed] standard." *Pritzker*, 42 F.3d at 61. This test requires that there be a "proximate cause relation" between American Baler's conduct and Goettsch's claims. *Mohajer v. Monique Fashions*, 945 F.Supp. 23, 27 (D.P.R.1996) (*citing Nowak*, 94 F.3d at 713–15). In the case at bar, Goettsch has alleged, and presented evidence to that effect, that it was the authorized dealer for American Baler in Puerto Rico at the time in which the

alleged accident occurred (Docket # 56 SCF No. 2, Ex. 1–C). Furthermore, Goettsch has argued and provided evidence that it sold for American Baler in Puerto Rico the same type of product as the one in question in this case (Docket # 56 SCF No. 3, Ex. 1). Additionally, Goettsch contends that nineteen (19) other American Baler's balers were also sold to Puerto Rico customers (Docket # 56 SCF No. 4, Ex. 1–B).[5] Thus, American Baler, as the manufacturer of balers, maintained contacts with Puerto Rico through Goettsch and derived economic benefit from said contacts. These contacts alone are enough to meet the relatedness test since the sale of the balers in Puerto Rico are directly related to Goettsch's claims that American Baler be held liable for the damages caused by a defective baler. However, in addition we find that the service visits to Puerto Rico are also directly related to the claims in this case. By its own admission, American Baler representatives came to Puerto Rico to provide service to the alleged defective baler which caused the accident that gave rise to this suit. Although these visits are remote to the time in which the accident occurred, reason why we found that we could not call them "continuous" or "systematic," there can be little doubt that these visits are nonetheless directly related to the functioning of the alleged defective baler. Thus, American Baler cannot seriously argue that these visits are unrelated to the case at bar. Accordingly, the relatedness test is met.

The second part of the tripartite analysis is the purposeful availment test. We must determine whether it was foreseeable

---

**5.** American Baler has alleged that "it has never sold directly or through an agent or representative a baler [ ] in Puerto Rico." (Docket # 40 at SUF J, Ex. 1). Instead, American Baler argues, without presenting any supporting evidence, that Goettsch is merely an independent distributor of American Baler (Docket # 76 at p. 4). Given this last statement, it remains undisputed that the American Baler products were sold in Puerto Rico with American Baler's knowledge and consent.

for American Baler to be haled into a Puerto Rico court to defend itself and whether its contacts with Puerto Rico were voluntary. To this end, American Baler makes much out of the argument that putting a product in the stream of commerce does not automatically give a court personal jurisdiction over its manufacturer. American Baler further argues that the sale of the alleged defective product took place in the State of Tennessee in the year 1980, twenty (20) years prior to the accident, and that it could not have foreseen that said product would reach Puerto Rico. This argument rests on the U.S. Supreme Court's decision in *Asahi Metal Industry Co., Ltd. v. Superior Court of Carolina, Solano County*, which held that "[t]he placement of a product into the stream of commerce, **without more**, is not an act of the defendant purposefully directed toward the forum State." 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (emphasis added).

American Baler's argument is unavailing. It ignores that the U.S. Supreme Court in *Asahi* also stressed that "additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state." *Id.* The U.S. Supreme Court stated that said conduct could include: designing the product for the market in the forum state, advertising and establishing channels of advice to customers and **marketing the product through a distributor who serves as a sales agent in the forum.** *Id.* (emphasis added) Naturally, having a distributor in the forum, allowing the sale of your products in the forum, and performing service visits for said products constitutes the "additional conduct" that the U.S. Supreme Court in *Asahi* envisioned as sufficient contacts to warrant a finding of purposeful availment. *See e.g. Benitez–Allende v. Alcan Aluminio Do Brasil, S.A.*, 857 F.2d 26, 30 (1st Cir.1988); *Keds Corp. v. Renee*

*Internat'l Trading Corp.*, 888 F.2d 215, 220 (1st Cir.1989).

Thus, considering the evidence presented by Goettsch as to American Baler's contacts with Puerto Rico (i.e.(I) Goettsch distributes American Baler's products in Puerto Rico, American Baler's products have been sold with its knowledge and consent in the Puerto Rico market, and (iii) American Baler performed services visits for the alleged defective product) it is reasonable to conclude that American Baler could have foreseen that it could be called to defend itself in a Puerto Rico court with relation to a tortious injury caused by any of its products. We reach this conclusion even after giving full credit to American Baler's assertion that it sold the alleged defective bailer to a third and unrelated party in the State of Tennessee in the year 1980. It is not the sale of said defective product that allows us to conclude that American Baler availed itself of the benefits of conducting business in the Puerto Rico, but its contacts with Puerto Rico as well as the economic benefits derived from said contacts. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)(under the Due Process Clause personal jurisdiction may be asserted "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.") The "purposeful availment prong is satisfied where [a] foreign corporation purposefully derived economic benefits from its forum-state activities even though [the] corporation ha[s] no employees, shareholders, or assets in [the] forum." *Brock Supply Co. v. Moulding Assocs., Inc.*, 81 F.Supp.2d 338, 343 (D.P.R.2000) (*citing Nowak*, 94 F.3d at 717, and holding that supplying products to the Puerto Rico market and deriving economic benefits from doing

business in Puerto Rico warrants a finding of purposeful availment). Our holding is consistent with the First Circuit's decision in *Boit v. Gar–Tec Products, Inc.* where the Court stressed that what matters is not the knowledge that a certain product was destined for the state-forum but that the defendant purposefully established minimum contacts with said forum. 967 F.2d at 682–83; *see Dalmau–Rodriguez*, 781 F.2d at 14–15.

Furthermore, as to the requirement that American Baler's contacts with Puerto Rico be voluntary, we note that a defendant's contact with the forum state is voluntary when it is not based on the unilateral actions of another party or a third person. *Nowak*, 94 F.3d at 717 (citations omitted). In the case at bar, there is no doubt that American Baler's contacts with Puerto Rico were voluntary. American Baler consented to the distribution of its products in Puerto Rico (Docket # 56 SCF No. 2, Ex. 1–C) and as such, voluntarily obtained the economic benefits of said sales (Docket # 56 SCF Nos. 3–4, Ex. 1–B).

The third step in this tripartite jurisdictional inquiry is the reasonableness test or gestalt factors. "The gestalt factors rarely seem to preclude jurisdiction where relevant minimum contacts exist." *Cambridge Literary Props. v. W. Goebel Porzellanfabrik*, 295 F.3d 59, 66 (1st Cir.2002). These support the conclusion that jurisdiction over American Baler is reasonable. We explain.

The first factor is American Baler's burden of appearing. *Sawtelle*, 70 F.3d at 1395. The Court acknowledges that there is some burden on American Baler if they must appear in Puerto Rico's courts. However, the First Circuit Court has held that since defending in a foreign jurisdiction almost always is inconvenient for the out-of-state party, that party needs to demonstrate a "special or unusual burden" in order to tilt the scale in favor of lack of personal jurisdiction. *Pritzker*, 42 F.3d at 64. American Baler has not pled that it would be a "special or unusual burden" for it to appear before this Court to defend its case. Accordingly, this factor weighs in favor of the Court's exercise of jurisdiction.

The second factor is the forum state's interest in adjudicating the dispute. *Sawtelle*, 70 F.3d at 1395. "A forum state has a demonstrable interest in exercising jurisdiction over a defendant who has caused a tortious injury within the state." *Mohajer*, 945 F.Supp. at 28 (citation omitted). Therefore, we find that since this suit involves a tortious injury that occurred in Puerto Rico and that the Puerto Rico products liability doctrine applies, Puerto Rico has an interest in exercising jurisdiction over this matter.

In the third place, we consider Goettsch's interest in obtaining convenient and effective relief. *Sawtelle*, 70 F.3d at 1395. The First Circuit Court has repeatedly held that "a plaintiff's choice of forum must be accorded a degree of deference with respect the issue of its own convenience." *Id.* (citations omitted). Goettsch is a corporation authorized to do business in Puerto Rico and it is being sued in this same action for its role of distributor or seller under the products liability doctrine. Naturally, Goettsch has an important interest in obtaining any relief applicable against American Baler in the same Court and in the same action that it may be held liable to Plaintiffs. Accordingly, we find that this factor weighs in favor of exercising personal jurisdiction over American Baler.

The fourth factor is the judicial system's interest in obtaining the most effective resolution of the controversy. *Sawtelle*, 70 F.3d at 1395. It is evident that the most

effective resolution in this case would be to have the manufacturer of the alleged defective baler in the same products liability suit as its distributor. This would avoid future litigation of this matter and would advance the good of reaching a uniform consistent outcome. Thus, this factor also weighs in favor of asserting jurisdiction over American Baler.

The fifth factor is the common interest of all sovereigns in promoting substantive social policies. *Sawtelle*, 70 F.3d at 1395. "Here the most important prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-state actors." *Id.* (*citing Burger King*, 471 U.S. at 473, 105 S.Ct. 2174). Absent any allegations to the contrary, we find that Puerto Rico has an important interest in providing a convenient forum to its residents and corporations to achieve redress for a tortious injury. Therefore, we find that this factor also weighs in favor of finding jurisdiction.

After completing the tripartite analysis and for all the reasons stated above, we find that it is fair and reasonable for this Court to assume personal jurisdiction over American Baler. Furthermore, there is no indication that this Court's jurisdiction over American Baler offends due process traditional notions of "fair play and substantial justice." Accordingly, the Court hereby **DENIES** American Baler's motion for summary judgment.

## II. Failure to State a Claim

■ American Baler unsuccessfully argues that Goettsch's claims should be dismissed since it has failed to plead an actionable products liability claim in its third party complaint (Docket # 40 at pp. 17–20). American Baler is under the impression that, in order to state a claim for products liability, a plaintiff must plead that the "product in question fails to match the average quality of like products at the time it was manufactured; or . . . why the product failed to perform as safely as an ordinary consumer would expect when used as intended or reasonably foreseeable manner, or . . . show that the product's design proximately caused Mr. Salgado's injuries." (Docket # 40 at p. 20).

Goettsch counters that it has complied with the "short and plain statement" requirement of the federal rules and has set forth well-founded claims for products liability. Goettsch correctly avers that American Baler is confusing the burden of proof of a products liability claim and Goettsch's burden to state a cause of action in the third party complaint (Docket # 56 at pp. 11–13).

■ Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a third party claim shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Rules further provide that "each averment of a pleading shall be simple, concise and direct" and that "[n]o technical forms of pleading" are required. Fed.R.Civ.P. 8(e)(1). Thus, the pleadings in a complaint are sufficient if the "allegations are detailed and informative enough to enable the defendant to respond." Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:* Civil 3d § 1215 at pp. 190–94. The goal is for the pleadings in a complaint to give a defendant fair notice of the claims and the grounds upon which those claims rest. *Id.* Furthermore, as is commonly known, pleading requirements are to be construed liberally by the Court.

In the case at bar, American Baler has limited its discussion to Puerto Rico case law that relates to the **adjudication** of a products liability claim. At no point does

American Baler cite any authority in support for its contention that more than a "short and plain statement" is required to plead a cognizable claim for products liability. Moreover, we are not aware of any case law to that effect.

Goettsch fully incorporates as Exhibit A to its third party complaint Plaintiffs' allegations in the amended complaint (Docket # 27 ¶ 1). In said amended complaint Plaintiffs adequately allege the basis for their claims, that is, that as a result of an accident at work with the extrusion baler designed and manufactured by American Baler Plaintiffs suffered physical and psychological damages for which they seek compensation. Plaintiffs include, and Goettsch incorporates, the model and serial number of the product in question. Furthermore, Goettsch's third party complaint specifies that American Baler is being sued so that it may respond to Goettsch should Goettsch become obliged to compensate Plaintiffs for the damages suffered as a result of the accident caused by the allegedly defective baler (Docket # 27 ¶ 7). Thus, we find that after receiving the third party complaint, American Baler was on notice of the claims against it and the grounds on which these rested, the products liability doctrine. No more was necessary. Accordingly, the Court hereby **DENIES** American Baler's motion to dismiss for failure to state a claim.

**Conclusion**

For the reasons stated herein, American Baler's motion for summary judgment for lack of personal jurisdiction is **DENIED** and American Baler's motion to dismiss for failure to state a claim upon which relief can be granted is **DENIED**. American Baler is instructed to file its Answer to the Third Party Complaint by **June 6, 2005**. The parties are granted until **June 30, 2005** to conclude any pending discovery and file an amended Joint Pretrial Order.

Thereafter, the Court will schedule a Pretrial and Settlement Conference. The parties are forewarned that no requests for extension of time will be entertained by the Court.

**SO ORDERED.**